EX PARTE WILLIAM BEDELL, HABEAS CORPUS.

Kansas City Court of Appeals, January 4, 1886.

ORDINANCES—CHARTER OF CITY OF MEXICO—WHEN VALID UNDER CHARTER.—The charter of the city of Mexico provides that all official acts of said city shall be in conformity to ordinances previously and duly enacted ; and that all ordinances  *  *  *  shall be signed by the mayor, or other person acting as such at the time, and published and recorded in a book, etc., and shall be published in thirty days thereafter, in some newspaper published in the city of Mexico, and shall not be in force until published, etc. *Held*, that that under these provisions of the charter, no ordinance is valid unless signed by the mayor proper, or *pro tempore*, and recorded and published ; but that one recording and publishing, after signature, was a sufficient compliance with the law ; and that neither recording nor publishing is to be repeated on each successive revision of the ordinances. *Held, further*, that the dram-shop ordinance, and the recorder's court ordinance, are valid, and in force in the city of Mexico ; and that the penalties on said ordinances and punishment provided, are neither unusual, nor contrary to the policy of the law in this state.

UPON hearing of petition for discharge, upon *habeas corpus*.

*Remanded to custody of Street Commissioner of City of Mexico.*

Statement of case by the court.

This is a proceeding under the *habeas corpus* act, in which the petitioner alleges he is illegally restrained of his liberty by Andrew J. Suber, at the city of Mexico, Audrain county, Mo. The return made by Suber shows him to be street commissioner of Mexico, and that as such he has the petitioner in charge. That petitioner was duly convicted of violating the dram shop ordinance of said city, and fined therefor; that, in default of the payment of the fine, it was adjudged that the marshal turn petitioner over to him, as street commissioner, for the purpose of laboring on the streets, as provided by

ordinance. That petitioner did fail to pay said fine, and was, therefore, placed in his custody, as aforesaid.

The material portion of the application for the writ, with the reasons therefor, is as follows:

"Said city of Mexico is a municipal corporation, and organized as such by an act of the legislature of the said state of Missouri, entitled 'An act to revise and amend an act entitled an act to incorporate the city of Mexico, approved February 17, 1857, and all acts amendatory thereof, and supplementary thereto, and to reduce the same to one act.' That said act was duly passed by the general assembly of said state, March 27, 1874. That by virtue of said charter, said city has power to 'license, regulate, or tax dram-shops, as said city may provide by ordinance.'

"The mayor, or in his absence, the chairman *pro tempore*, shall preside at all meetings of the city council, and shall have a casting vote when the council shall be equally divided. And none other shall sign all bills before they shall become ordinances.

"The city council shall have power 'to regulate the police of the city, and to impose fines, forfeitures, and penalties, for the breach of any ordinance, and also for the recovery and collecting of the same, and, in default of payment, to provide for confinement in the county jail, city prison, or work-house, or at any labor on the streets, or either.'

"That said city council has authority to appoint a street commissioner, and said Andrew J. Suber is now acting as such for said city.

"That under said city charter, it has power to create, by ordinance, a recorder's court, which has power to try all offences against the ordinances of said city. That one, E. S. Frost, is now acting as such city recorder, and has been for six months last past.

"That there is an ordinance of said city entitled 'Dramshops and Druggists,' which contains the following provisions:

"'No person, or persons, shall directly, or indi-

rectly, sell intoxicating liquors within the corporate limits of the city of Mexico, in any quantity less than one gallon, without first taking out license as a dram-shop keeper.

"'Any person violating the provisions of the foregoing sections, shall, for every such violation, be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by fine, in any sum not less than seventy-five, nor more than one hundred and fifty dollars, and one-half of said fine, when collected, to be paid to the informer.'

"That said petitioner has, by said E. S. Frost, been found guilty of a violation of said ordinances.

"Your petitioner alleges that said ordinances are void, for the reason that they were never signed by the person acting as mayor of said city at the time of the passage of the same by said city council, and for other reasons hereinafter set out, and particularly stated. That there is another ordinance of said city entitled 'Recorder's Court,' known as 'Chapter fourteen of the revised ordinances of said city,' which said chapter contains the following provisions:

"'When on trial, according to law, any person is found guilty of a violation of any ordinances of the city, and fined therefor, and fails, or refuses, to pay the same forthwith, together with all costs, it shall be the duty of the recorder to order the defendant into the custody of the marshal till the fines and costs are paid; and to issue his warrant of commitment against the defendant, commanding the marshal to commit him to the city calaboose, or the county jail, for the number of days that the fine and cost may amount to in dollars. And it shall further be the duty of the recorder to adjudge that the party, in case of non-payment of said fine and costs, labor upon the streets, alleys, or other public works in said city, until said fine and cost is discharged.

"'Whenever any person shall have been committed to the calaboose, as provided for by this ordinance, for failure or refusal to pay any fine adjudged against him,

and shall be adjudged to labor upon the streets, or other public works of the city, it shall be the duty of the steret commissioner, upon the warrant, or written order of the recorder, to require said person so fined, to work upon the streets, or other public works of the city. And the said street commissioner is hereby authorized and empowered upon such warrant, or order, to demand and receive of the jailor, in said city, said person, and remand him to jail every day he may be so required to work.'

" That all of said ordinances aforesaid are void.

"That said city recorder has never adjudged said petitioner to work upon said streets, or rendered judgment to the effect that said petitioner should be put into the hands of the said A. J. Suber to work upon the streets to pay said fine and costs, nor that your petitioner has failed or refused to pay said fine.

Your petitioner further states that no application for the relief herein sought, has been made to, or refused by, an officer, officers, or court superior to the said court of appeals, etc."

ELLISON, J.—The question involved here is as to the validity of the ordinances of the city of Mexico known as the dram-shop and recorder's court ordinances. If these are void, the petitioner is entitled to his discharge, for in such case the recorder had no jurisdiction, and his proceedings, from beginning to end, were without authority, and utterly void.

The principal objections urged against the validity of these ordinances are, first, that they have not been recorded ; second, that they were not published in any newspaper in the city of Mexico, as provided by the charter ; third, that they were not enacted in accordance with any rule or regulation provided for legislation by the city council ; fourth, that they are in conflict with the policy of the law of this state, in so far as they authorize petitioner to be worked on the public streets.

Section seven of article one, and section thirty-one, article six, of the city charter, are as follows:

"Section 7. All official acts of said city shall be in conformity to ordinances previously and duly enacted; and all ordinances, orders, and resolutions, before such shall be in force, shall be signed by the mayor, or other person acting as such at the time, and published and duly recorded in a substantial book, to be provided for that purpose, and according to such ordinances as may be enacted, providing rules for legislation, and the performance of the duties of the several officers of the city."

"Section 31. All ordinances of the city shall be passed pursuant to such rules and regulations of the board of the city council as that body shall provide, shall be published in thirty days thereafter in some newspaper published in the city of Mexico; and shall not be in force until so published, and they may be revised and published in book or pamphlet form, at least once in five years."

Under these sections of the charter, I am of the opinion no ordinance would be valid without its first being signed by the mayor proper, or *pro tempore*, recorded and published. 1 Dillon's Municipal Corporations, sect. 331. It does not follow, however, that an ordinance would be invalid because not enacted in accordance with a rule or regulation provided by the council. Attention to the phraseology of these sections will show that they are not intended to be mandatory, except as to the ordinances being signed by the mayor, recorded and published. That they shall be passed in accordance with the rules first prescribed, is directory merely. It was not intended that an ordinance, otherwise legal and regular, should be invalidated merely from the failure to follow some regulation theretofore made by the council. Moreover, it has been held that the validity of a statute duly authenticated, cannot be impeached, by showing a departure from the forms prescribed by the constitution. *Pacific Railway v. The Governor*, 23 Mo. 353. And this principle is applied to ordinances of mu-

nicipal corporations. *Ball v. Fagg*, 67 Mo481; *City of St. Louis v. Foster*, 52 Mo. 513.

The question in the case remains, were these ordinances signed, recorded and published, within the meaning of the charter? It appears that both the dram-shop and recorder's court ordinances were originally passed and recorded several years prior to the revision of 1883, and that they were incorporated bodily into this revision, but not again recorded. It is admitted that the dram-shop ordinance, as originally passed in 1881, was signed by the mayor, and was duly published in a weekly newspaper, published in Mexico, Mo., within thirty days after its passage. The recorder's court ordinance was published by being printed in St. Louis, and circulated in Mexico, Mo., with, and as a part of the local paper at that place.

The recording of the ordinances when they were originally passed was a sufficient compliance with the law. It was not intended, or contemplated by the charter that they should be recorded at each successive revision. By virtue of chapter twenty-six of the ordinance revision of 1883, only such ordinances were repealed as were repugnant to, or inconsistent with, those incorporated in the revision. Those that are the same, or that part of those which is the same as those in the revision, are declared to be a continuation of the ordinances theretofore existing. And such, indeed, would have been the law without this enactment. *City of St. Louis v. Alexander*, 23 Mo. 483, 509; *City of Cape Girardeau v. Riler et al.*, 52 Mo. 424; *State ex rel. v. Heidorm*, 74 Mo. 410. It will, of course, be seen at once that if the ordinances date from their original passage, and are not affected by the revision, it would be idle to again record them. What is said in regard to the recording will apply with equal force to a republication. There is no reason or necessity for either.

The fact that the recorder's court ordinance was printed in St. Louis does not affect its validity, since it was "published" in Mexico. It was a sufficient publica-

tion to circulate it with the local paper as a part thereof. Many newspapers are now printed at places distant from the place of their publication. The place of printing has no necessary connection with the place of publication.

The dram shop ordinance, and the recorder's court ordinance, as they appear in the revision of 1883, are valid, and of binding force, in the city of Mexico, and, under the provisions of sections eleven and twelve of the recorder's court ordinance, it is adjudged in the first instance, that in default of the payment of the fine and costs, the defendant shall labor upon the streets, or alleys, or other public works in the city. There is but one adjudication necessary, and but one is contemplated by the charter and ordinances. If a defendant should pay the fine and costs assessed, and yet be compelled to perform labor, he would then be in a position to demand his release on *habeas corpus*.

It is urged in behalf of the petitioner that the punishment being inflicted upon him is cruel and unusual, and that it is contrary to the general policy of the law in this state. I cannot concur in this view. There is no statute forbidding it in this state, but, on the contrary, inflicting it in certain contingencies. It is specially authorized by the legislature, as is seen by reference to section twenty-nine, of article six, of the charter of Mexico.

There are other matters urged before us not necessary to refer to in detail, we have given all the petitioner's complaints and objections careful consideration, and can find nothing to justify this court in ordering his release. He has brought his troubles upon himself by a disregard of the laws he should have obeyed. He should have weighed the consequences in the first instance. He who sows the wind shall reap the whirlwind.

It is, therefore, ordered that petitioner, the prisoner, be remanded to the custody of Andrew J. Suber, street commissioner of the city of Mexico, Mo., there to remain until discharged by due course of law, as if the

writ in this cause had not issued.  Philips, P. J., concurs.  Hall, J., absent.