THE CITY OF TOPEKA *et al.* v. D. W. BOUTWELL.

1. TRIAL—*Submission of Special Questions.* Where pertinent questions of fact are stated in writing and handed to the court by a party at the conclusion of the testimony, to be submitted to the jury for their findings thereon, it is error for the trial court to refuse to submit them.

2. POLL TAX—*Names of Persons Liable to.* The city council of the city of Topeka has the power, by ordinance, to require the keepers of boarding houses, restaurants and hotels to furnish the street commissioner the names of persons liable to poll tax boarding or lodging in their houses, and to impose a fine for refusal to do so.

3. POLICE COURT—*Valid Judgment.* A judgment duly rendered by the police court of a city cannot be held void because of a defense of which the prisoner did not avail himself.

4. CITY PRISONERS—*Work on Streets—Valid Ordinance.* Ordinance No. 91 of the city of Topeka, approved May 12, 1870, permitting prisoners committed to the city prison for the violation of a by-law or ordinance of the city necessary for the preservation of order and the welfare of society to be employed by the city marshal at labor either on the streets or public work of the city, or in a public or private place, being credited $1 a day on the judgment for each day's work performed, is not in conflict with § 6 of the bill of rights of the constitution of the state, or article 13 of the constitution of the United States, prohibiting slavery and involuntary servitude.

5. PRISONERS—*Cruel Treatment—Liability.* The marshal and policemen of a city, and any persons aiding and abetting them, are liable in damages for unnecessary cruelties and indignities inflicted by them on prisoners in their charge.

### *Error from Shawnee District Court.*

D. W. BOUTWELL brought suit in the district court of Shawnee county against the *City of Topeka,* D. C. Metsker, its mayor, John F. Carter, Joseph Reed, Pat. Wilson, J. W. Gardiner, Henry Bernard, John Ewing, and Ben Williams, charging them with assault and battery, false imprisonment, and other wrongs and indignities connected with such imprisonment, for which he demanded damages. A demurrer on the part of the city of Topeka to the petition was sustained. Demurrers of the other defendants were overruled.

Metsker, by his answer, denied generally the allegations of the petition. Carter alleged that he was the duly-appointed and acting marshal of the city of Topeka; that on the 14th of September, 1887, the plaintiff was tried before one Joseph Reed, police judge of said city, upon a charge of unlawfully refusing to give, upon request, to the street commissioner of said city, the names of certain persons liable to pay a poll tax, then lodging in a certain boarding house of which said plaintiff was the keeper; that the plaintiff was found guilty of said charge and sentenced to pay a fine of $25, and committed to the city prison until such fine should be paid; that the plaintiff was also tried on the same day before said police judge upon a charge of resisting an officer in the discharge of his duty, found guilty, and sentenced to pay a fine of $75, and committed to the city prison for the nonpayment thereof; that it became his duty as marshal to confine and safely keep the plaintiff until he should comply with said judgments; that the plaintiff being an able-bodied man, the defendant, as marshal, did, by virtue of ordinance No. 91 of said city, command the plaintiff to work at breaking rock on the rock pile, which the plaintiff refused to do; that in his treatment of the plaintiff he used no more force than was necessary to execute the judgment of the court, and perform his duties as the custodian of such prisoner. The defendant Wilson alleges that he was a policeman of the city; that a warrant was duly issued by the police judge and placed in his hands, commanding him to arrest the plaintiff on a charge of unlawfully refusing to furnish the street commissioner the names of persons liable to poll tax lodging in a boarding house of which he was keeper; that he proceeded to serve such warrant; that the plaintiff resisted arrest with deadly weapons; that he used no more force in making the arrest than was reasonably necessary. All of the other defendants justified under the processes referred to in the answers of Carter and Wilson. Ordinance No. 426, providing for the collection of poll taxes, contains this section:

"SEC. 4. It is hereby made the duty of all proprietors or

keepers of all boarding houses, restaurants or hotels in the city of Topeka to furnish to the street commissioner, when required so to do, the names of all persons boarding or lodging in their houses, and any such person who shall neglect or refuse so to do shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof in the police court of said city, be fined in the sum of not less than $5 nor more than $25 for each offense."

Ordinance No. 36, relating to misdemeanors, contains the following section:

"SEC. 14. That any person conducting himself in a riotous or disorderly manner, or who shall resist or oppose any officer in the discharge of his duty, or who shall openly use profane or indecent language, or indecently expose his or her person, or commit any nuisance upon any street, sidewalk, alley or other public place of the city, shall be fined in a sum not less than $1 nor more than $100."

Ordinance No. 91 provides that persons committed to the city prison may be compelled by the marshal to work at hard labor, and, in case of refusal to so work, that they shall be kept in close confinement and fed on bread and water only until they consent to work. On the issues so joined the case was tried. After the testimony was concluded, special questions for the jury to answer were filed and handed up to the court by the defendants' counsel with the instructions asked by the defendants, but no announcement of the fact was made, and plaintiff's counsel did not know at that time that such special questions were presented. After the court had charged the jury, and after the opening argument for the plaintiff and the first argument for the defendants had been made, the court's attention was called to the special questions by the defendants' counsel, just as the court adjourned for dinner. Thereupon the court handed the questions to counsel for plaintiff, which was the first knowledge they had of their existence, who, upon the opening of the court at 2 o'clock, objected to the presentation of said special questions, and also asked an opportunity to be heard by the court respecting the legality, fitness and relevancy to the issue of said

proposed questions, to which counsel for the defendants objected.    Thereupon the court refused to submit the special questions to the jury.    The jury were charged that § 4, under which the original complaint was filed in the police court, was void, and plaintiff's arrest unlawful; that such being the case, the plaintiff could not be guilty of any offense in resisting said officer in making said arrest; that the judgment of the police court was illegal, and the subsequent imprisonment of the plaintiff was unlawful and false.    It was shown on the trial, that on the 13th day of September, 1887, a complaint was filed by Wilson charging the plaintiff with a violation of § 4 of ordinance No. 426, above quoted.    A warrant was issued on such complaint, and placed in the hands of Wilson, who was a policeman, to serve.    The plaintiff resisted arrest.    Wilson called others to his assistance, overpowered the plaintiff, put him in a wagon, and took him to the city prison, where he was kept until the following day.    On the 14th, he was taken before the police judge for trial.    He refused to plead.    Thereupon a plea of not guilty was entered for him, witnesses were examined, he was found guilty and fined $25, and ordered to stand committed until such fine should be paid.    The same day another complaint was filed, under § 14 of ordinance No. 36, above mentioned, charging the plaintiff with resisting an officer in serving a warrant on plaintiff.    He was arraigned on this charge, also, and refused to plead.    A plea of not guilty was entered for him.    He was tried, convicted and sentenced to pay a fine of $75 for this offense, and committed to the city prison.    The marshal kept him in custody under these commitments until the 17th day of September, when he was released from custody by giving a bond in a *habeas corpus* proceeding in the district court of Shawnee county, and afterward, on the 8th day of November, 1887, was discharged under such proceedings by said court.    The jury rendered a verdict in favor of the plaintiff against all of the defendants for $2,100.    The defendants bring the case here for review.

*Douthitt, Jones & Mason,* for plaintiff in error D. C. Metsker:

It seems there could be no reasonable question of doubt that the court erred in this case in refusing to submit to the jury special questions asked for. Civil Code, § 286; *W. & W. Rld. Co. v. Fechheimer,* 36 Kas. 45; *City of Wyandotte v. Gibson,* 25 id. 243; *A. T. & S. F. Rld. Co. v. Plunkett,* 25 id. 198; *Bent v. Philbrick,* 16 id. 190.

The court erred in overruling the demurrer of the plaintiff in error D. C. Metsker to the testimony of the plaintiff at the trial; in refusing instructions asked for by plaintiff in error, and especially instructions to the jury that the evidence offered by the defendant in error was not sufficient to show any cause of action against plaintiff in error.

The trial court erred in the instructions given to the jury in this case, and especially instruction No. 4. This instruction, in simple words, says: "Metsker was mayor (superior officer); that Boutwell had been unlawfully arrested and imprisoned; and if Metsker knew this and did not order his release he is liable, or if he gave any order or direction respecting the control, management or treatment of Boutwell while in jail, he is liable." This cannot be the rule of law.

But whether § 4 of ordinance 426 is constitutional and legal or not, the warrant issued under the same was a protection for the police officer, if he proceeded to execute the same in good faith and in a reasonable manner. Cooley, Torts, 459; *Savacool v. Boynton,* 21 Am. Dec. 181, and full discussion and authorities in notes, 190, 209.

Section 4 of ordinance 426 is a reasonable police regulation, and is not void.

*W. A. S. Bird,* for plaintiffs in error D. C. Metsker, John F. Carter, Ben. Williams, and Pat. Wilson:

On the trial of this action in the court below, the defendants submitted to the court 32 interrogatories, and asked that they be submitted to the jury, all of which were refused by the court. It is insisted by the plaintiffs in error that all of

these interrogatories were material, were within the issues made by the pleadings, and there was evidence upon which they should have been submitted.

"It is the right of the parties to have important questions of fact that are based on competent testimony, and which are within the issues of the case, submitted to the jury and answered upon request, and the refusal of this right is material error." *W. & W. Rld. Co. v. Fechheimer*, 36 Kas. 46; *C. I. & K. Rld. Co. v. Townsdin*, 38 id. 82. See, also, *Bent v. Philbrick*, 16 Kas. 190; *Morrow v. Comm'rs of Saline Co.*, 21 id. 484; *City of Wyandotte v. Gibson*, 25 id. 243; *A. T. & S. F. Rld. Co. v. Plunkett*, 25 id. 193; *McPheeters v. Birk*, 48 id. 784.

The warrants served upon the defendant in error, Boutwell, were issued by an officer who had jurisdiction of the offenses charged under the ordinances, and who had authority to issue them. The warrants were regularly issued, and are fair on their faces, and are a complete protection to the officers. See Cooley, Torts (2d ed.), p. 538, and authorities there cited. See, also, Newell, Mal. Pros., §§ 71, 72, 75, and authorities cited; *Cassier v. Fales*, 139 Mass. 461; *Stewart v. Hawley*, 21 Wend. 552; *Lloyd v. Haun*, 11 Atl. Rep. 346, and note; same case, 50 N. J. L. 1; *Henke v. McCord*, 55 Iowa, 378; 34 Ark. 105; *Leib v. Iron Co.*, 12 S. Rep. 67.

Conceding for the sake of the argument that the first warrant was not legal, if Boutwell was held under the second commitment, the officers are not liable. *In re Durant*, 60 Vt. 176; *In re Miles*, 52 id. 609.

*David Overmyer*, and *G. C. Clemens*, for defendant in error:

Defendants did not submit 32 interrogations; but each defendant submitted a few. Neither can claim error in refusing any but his own.

As to all but Metsker, the fate of their proceedings in error undoubtedly hangs upon the question whether the third instruction was right; and as to Metsker, upon the further question whether the fourth instruction was right. Counsel do not discuss the third instruction; and the whole tenor of

their argument assumes that instruction to be right. They cite no authority against it. The point was conclusively settled by the judgment in the *habeas corpus* and *certiorari* proceedings. *Ex parte Jilz,* 64 Mo. 205–215; *Grady v. Superior Court,* 64 Cal. 155, 156; *Weir v. Marley,* 99 Mo. 484, 489; Church, Hab. Corp., latter part of § 386, p. 520.

Section 4 of the ordinance was not authorized by any provision of the city charter; and it was void besides, as unreasonable. We are therefore entitled to an affirmance as to all but Metsker without going further; and if the fourth instruction was right, we are entitled to an affirmance as against him also. That instruction was right. Metsker was just such a "superior officer" as that instruction describes. Gen. Stat. of 1889, ¶¶ 595, 624, 640. In the absence of the metropolitan police government, the mayor is, in reality, the chief of police. It is conceded that, without the council's concurrence, he could not pardon or remit a fine; but he had ample power to order a citizen released from an unlawful imprisonment.

There was abundant evidence that Metsker was pointedly called upon to exercise that power, and did give an order or direction. Having power to stop that unlawful conduct of his subordinates, and having had full knowledge of that conduct, and been expressly called upon to exercise his authority, his neglecting and omitting to put a stop to such conduct, but, instead, indorsing and continuing it, only under slightly modified conditions, Metsker thereby became a trespasser *ab initio.* The whole was one continuous false imprisonment, and whoever aided it at any point was guilty of the whole. The instruction was an induction from the adjudged cases. *Griffin v. Coleman,* 4 Hurl. & Nor. 265; *Boyce v. Bayliffe,* 1 Campb. 60; 2 Add. Torts (Wood's ed.), 41; *Ackroyd v. Ackroyd,* 3 Daly, 38, 42.

The proposition which counsel obviously mean to invoke in Metsker's behalf, that public officers are not liable for the acts of their subordinates, has two important limitations, both of which apply to this case. First, where the officer has the

power of appointing his own subordinates, and knowingly appoints or retains unfit persons; and, second, where the superior officer himself is a party to the particular acts committed by his subordinates. These limitations run through all the authorities to the very latest utterances of the courts. A superior officer is liable "where he is negligent in superintending his subordinates in the discharge of their duties, or where he coöperates in or authorizes the wrong." 19 Cyclopædia of Law, 496. In such cases the rule has no application. Section 591, Gen. Stat. of 1889, provides that "The mayor . . . shall have the superintending control of all of the officers and affairs of the city. . . ."

Instruction 4 requires that the superior officer shall be "advised of such false imprisonment, and the fact of its continuance by said officer or officers so receiving said person into custody." He must know of the unlawful conduct while it is still in course of perpetration; and then, having this actual knowledge of the outrage being that moment in process of infliction upon a citizen, omit or neglect "to order the release of such person," or must give some "order or direction respecting the control, management or treatment of such person while he remains in custody." It violates common sense to say that a superior officer is not under such circumstances liable.

The facts in this case bring Metsker within the terms of the sixth instruction, of which no complaint is made. The fourth instruction does but amplify the sixth.

But it is said that Boutwell was then held under judicial sentences, and Metsker had therefore no power to interfere. The sentences were declared void on *habeas corpus*, which concludes the matter. They were no sentences, but the acts of a private citizen. The plaintiff was not sentenced to hard labor either as a part of his punishment, or as a means of collecting the fines. Now, at no moment was the plaintiff imprisoned in pursuance of this judgment. His whole subsequent imprisonment was as a punishment, adjudged by no court, for refusing to work on the rockpile. He was not

simply detained in the city prison; he was imprisoned in another place altogether, as distinct as if it had been in a separate building on the other side of the city; a place kept not for the execution of judicial sentences, but for the infliction of punishment imposed by the jail officials themselves. The "bull pen" was a special prison reserved for a special purpose. It was the means of executing the provisions of § 6 of ordinance No. 91 — the "rock-pile" ordinance.

Even were ordinance 91 unquestionably valid, it could not be lawfully enforced unless its provisions were made part of the sentences. *Sobert v. Lynch,* 67 Ind. 474. But that ordinance is flagrantly unconstitutional. Bill of Rights, § 6.

The offenses forbidden by city ordinances are not crimes, (*The State v. City of Topeka,* 36 Kas. 76,) and if they were, ordinance 91 does not inflict servitude as a punishment for such offenses; the fines are the punishments. Besides, "duly convicted" means by a jury trial, which a police court cannot give. See *Ex parte Wilson,* 114 U. S. 429; 3 Bl. Comm., pp. 156, 161; *In re Wheeler,* 34 Kas. 96; *In re Boyd,* 34 id. 570, 574. No separate motion for a new trial as to Metsker, fatal. "A motion for a new trial is indivisible when made jointly by two or more parties. If it cannot be allowed as to all, it must be overruled as to all." *Dorsey v. McGee,* 46 N. W. Rep. (Neb. 1890) 1018. See, also, *Miller v. Thompson,* 47 N. W. Rep. (Minn.) 452; *Dutcher v. The State,* 16 Neb. 30. "And a separate motion will be denied if the verdict is justified as to either or any of the defendants." 16 Am. & Eng. Encyc. of Law, p. 615. Even conceding, therefore, that the verdict was erroneous as to Metsker, yet, the motion for a new trial being joint, if the verdict was right as to any of the defendants, it must stand as to all.

The opinion of the court was delivered by

ALLEN, J.: Many questions are discussed by counsel. We shall consider only such as are necessary for the disposal of the case. The defendants stated, in writing, pertinent and material questions of fact to be submitted to the jury. These

were filed with the clerk and handed to the court, together with special instructions asked, at the conclusion of the testimony.  This was certainly in good time.  It appears tha the attention of plaintiff's counsel was not called to the fact that special questions were asked until after the opening argument by the plaintiff and one argument on behalf of the defendants, when the defendants' counsel again called the attention of the court to the questions.  The court then refused to submit them.  The only excuse hinted at in the record is, that plaintiff's counsel asked leave to discuss the propriety of the questions, to which the defendants objected, and that they were not submitted in time.  In this the court erred.  (*Bent v. Philbrick,* 16 Kas. 190; *Railroad Co. v. Plunkett,* 25 id. 198; *City of Wyandotte v. Gibson,* 25 id. 236; *Railroad Co. v. Fechheimer,* 36 id. 45.)  When counsel for the defendants presented these questions to the court, and requested their submission, they had done all the law required of them.  It might have been well for the court or counsel to have called the attention of the opposing party to them, but we cannot hold that a failure to do so deprived the defendants of their right under the statute.  We also think, where there was no court rule prescribing the time within which such questions might be presented, that the defendants were still in time when they called the attention of the court and opposing counsel to them before the noon adjournment, and before defendants' argument was concluded.  The error committed in this particular compels a reversal as to all of the defendants. It is, therefore, unnecessary to consider errors urged by the defendant Metsker alone.

1. Trial— submission of special questions.

Upon a new trial, the court will be required to pass on the validity of the ordinance and the legal process issued thereon. It seems, therefore, to be necessary for us to also consider these matters.  The trial court held § 4 of ordinance 426 void.  We fail to perceive any good reason for so holding.  It is a provision to enable the officers of the city to learn the names of persons subject

2. Poll tax— names of persons liable to.

to poll tax. The ordinance of which it is a part was framed to require the performance of labor on, or the payment of money for the improvement of, the city's streets. This is a necessary public purpose. All revenue laws have distasteful features. It is necessary in their enforcement that methods somewhat inquisitorial be pursued. All attempts of the public to gather statistics, either by taxing officers, census takers, or in any other manner, necessarily impose some burdens and inconveniences on the people. We see nothing unreasonable in requiring the keepers of boarding houses to make known to the officers of the law the names of their boarders. The conviction, therefore, under the complaint filed in this action was not void, nor was the warrant under which the first arrest was made. However this might be, there is no pretense that the second complaint did not charge an offense under a valid ordinance. There is no claim that a person who, in fact, resists an officer in the discharge of his duties may not be punished for so doing. The defendant had the privilege of showing, if he could, that he was not guilty of the offense,

3. Police court— valid judgment.

but if, on the trial, the court found him guilty and assessed a fine against him, a commitment clearly would not be void, even though he were in fact innocent of the offense charged.

The validity of ordinance No. 91, authorizing the marshal to compel prisoners confined in the city prison to work at hard labor is challenged, as being in conflict with § 6 of the bill of rights of this state, which reads as follows: "SEC. 6. There shall be no slavery in this state; and no involuntary servitude, except for the punishment of crime, whereof the party shall have been duly convicted." The authority for the passage of the ordinance is contained in the thirty-seventh subdivision of § 11, chapter 18, of the General Statutes of 1889, by which the mayor and council are given power to enact ordinances "to regulate the police of the city, and to impose fines, forfeitures and penalties for the breach of any ordinance, and to provide for the recovery and collection thereof, and, in default of payment, to provide for con-

finement in the city prison, or to hard labor." The ordinance in question does not provide for a judgment sentencing the defendant to confinement at hard labor, but authorizes the marshal to require the prisoners in his custody to labor. The ordinances under which the convictions were had authorized punishment by fine. The police judge imposed a fine of $25 under the first complaint, and $75 under the second, and committed the defendant to the city prison until the fine and costs should be paid. In neither case was there any judgment imposing hard labor as a punishment for the violation of an ordinance.

It was said by this court in *In re McCort*, 52 Kas. 18, in considering an ordinance of a city of the second class: "The law permits, but does not require, city authorities to cause city prisoners to work on the streets and public grounds of the city." In that case, it was contended by the prisoner that it was incumbent on the city authorities to cause him to work, and that, if they failed to do so, he was entitled to the same credit per day on his fine that he would have had if kept at work. The question as to the power of the city to compel the performance of hard labor was not raised. It was said in the opinion:

"The punishment which the law authorizes is a fine and the costs. If the defendant pay the fine and costs, neither imprisonment nor compulsory labor can be imposed. For the purpose of enforcing the collection of the fine, the law authorizes imprisonment, and for the same purpose it also authorizes the employment of prisoners on the streets."

In order to uphold ordinance 91, so far as it authorizes compulsory labor, it is necessary that it be imposed as a punishment for crime. If the prisoner is unwilling to work, clearly to compel him to do so would be to impose involuntary servitude. (*Ex parte Wilson*, 114 U. S. 417.) In this case, and in the McCort case, on payment of the fine the defendant would have been entitled to discharge, and could neither have been confined in prison nor required to labor. The provisions of the ordinances authorizing imprisonment

and compulsory labor are mere means of collecting the fines. Neither is imposed as a punishment. It is wholly unnecessary to discuss the question as to whether § 5, which guarantees the right of trial by jury, has been violated. For authorities on that point, see *The State, ex rel., v. City of Topeka,* 36 Kas. 76; *In re Rolfs,* 30 id. 758; *City of Emporia v. Volmer,* 12 id. 622; *Neitzel v. City of Concordia,* 14 id. 446. The conclusion is inevitable that hard labor was not imposed on the plaintiff as a punishment for crime whereof he had been duly convicted, but that the attempt to cause him to labor was made in pursuance of the ordinance as a means of collecting the fines, and was therefore in violation of the bill of rights.

4. City prisoners —work on streets—valid ordinance.

It is claimed by the plaintiff that, in making the arrest, in taking him to prison, and while in confinement, he was beaten and treated with harshness and cruelty. The policeman who made the arrest had the right to use such force as was reasonably necessary under the circumstances to overcome the plaintiff's resistance; and where resistance is made with deadly weapons, like a hatchet or hammer, the officer would not be held to that degree of nice and scrupulous care in effecting the arrest that would be required in ordinary cases; but, having overcome such resistance, and having the prisoner fully in his power, the officer is then liable for any unnecessary harm or indignity done to the prisoner. It is the duty of all keepers of jails and prisons to treat their prisoners humanely. Keepers of city prisoners have no warrant or authority in law to be harsh and brutal in the management of those in their custody. For all needless sufferings and indignities which they impose, they are accountable in damages to the party injured, and all persons aiding or assisting in such wrongs are liable with them.

5. Prisoners— cruel treatment—liability.

For the errors mentioned, the judgment must be reversed, and a new trial awarded.

HORTON, C. J.: I do not assent to all that is stated in the foregoing opinion. I supposed that the power of a city to require city prisoners committed to the city jail to work was no longer a subject of contention in this state, but it is questioned again in this case. (*In re Dassler*, 35 Kas. 678; *The State, ex rel., v. City of Topeka*, 36 id. 76; *In re McCort*, 52 id. 18.) In the latter case, it was expressly held by this court that "the law permits, but does not require, city authorities to cause city prisoners to work on the streets and public grounds of the city." In the opinion prepared in the McCort case by ALLEN, J., it was observed:

"The punishment which the law authorizes is a fine and the costs. If the prisoner pays the fine and costs, neither imprisonment nor compulsory labor can be imposed. For the purpose of enforcing collection of the fine, the law authorizes imprisonment, and for the same purpose it also authorizes the employment of prisoners on the streets. The statute gives the city council the power to fix the rate per day to be allowed a prisoner who is working out his fine, without any limitation. The city may or may not have work on which it would be profitable or desirable to employ city prisoners. If the city authorities see fit to put the prisoner at work, he must be credited on the fine and costs at the rate of $1 per day for the time he is so employed, and if they do not see fit to have him work, he will get no credit for the time he remains in jail, but can be discharged at any time on payment of the fine and costs."

This court has already decided that fines and costs are not debts within the meaning of the constitutional provision forbidding imprisonment for debt. Therefore, when it is stated that imprisonment and labor imposed under the provisions of a statute or the ordinances of a city are "solely the means of collecting a debt," such language is misleading, as the word "debt" is construed in the constitution. A fine is not the kind of a debt referred to in the organic law. (*In re Wheeler*, 34 Kas. 96; *In re Boyd*, 34 id. 570.) If, however, we re-examine the power of cities of this state to compel persons committed to city prisons to work, I think the validity of

ordinance No. 91, of the city of Topeka, approved May 12, 1870, may be sustained upon two different lines of decisions, either of which is amply sufficient for its support.

First, upon the decisions for discipline and treatment: the ordinance authorizes persons committed to the city prison for the nonpayment of fines or penalties to be employed by the city marshal at labor either on the streets or public work of the city, or in a public or private place, until the fine and costs are paid, a credit of $1 being allowed on the judgment for each day's work performed. This ordinance was passed in conformity to subdivision 37, § 11, chapter 18, Gen. Stat. of 1889, conferring general powers upon the mayor and council of the cities of the first class. (Gen. Stat. of 1889, ¶ 55.) A similar statute permits confidence men, vagrants or strolling vagabonds to be set to work. (Gen. Stat. of 1889, ¶ 571.) Another statute authorizes county commissioners, when they deem it advisable so to do, to put to work prisoners committed to the jails of their respective counties for failing to pay fines and costs. (Gen. Stat. of 1889, ¶¶ 2510, 5425.) Similar statutes exist in almost every state of the union.

Article 13 of the United States constitution, prohibiting "involuntary servitude," is substantially the same as § 6 of the bill of rights of the state constitution. Korstendick was convicted May 1, 1876, in the circuit court of the United States for the district of Louisiana, for conspiracy, and sentenced to pay a fine of $2,000, and to be confined for 16 months in the penitentiary at Moundsville, W. Va. The statute under which he was convicted did not make hard labor a part of the punishment, and labor was not imposed by or included in the sentence. After his conviction, Korstendick was confined in the penitentiary at Moundsville, and was compelled by the authorities in charge to perform hard labor. He objected, and commenced his proceedings in the supreme court of the United States to obtain his discharge by *habeas corpus*. His contention was, that "where the punishment provided for by the statute is imprisonment alone, a sentence to confinement at a place where hard labor is imposed as a

consequence of the imprisonment is in excess of the power conferred." His writ was denied. Chief Justice Waite, in delivering the opinion in that case, stated that "As early as 1834 congress enacted that, whenever any criminal convicted of any offense against the United States shall be imprisoned in pursuance of such conviction, or of the sentence thereon, in the prison or penitentiary of any state or territory, such criminal shall, in all respects, be subject to the same discipline and treatment as convicts sentenced by the courts of the state or territory in which such prison or penitentiary is situated;'" and then observed: "Where the statute requires imprisonment. alone, the several provisions which have just been referred to place it within the power of the court, at its discretion, to order execution of its sentence at a place where labor is exacted as part of the discipline and treatment of the institution or not, as it pleases." (*Ex parte Korstendick*, 93 U. S. 396.)

In *In re Mills*, 135 U. S. 263, Harlan, J., remarked that "There are offenses against the United States for which the statute, in terms, prescribes punishment by imprisonment at hard labor. There are others for which the punishment is 'imprisonment' simply. But, in cases of the latter class, the sentence of imprisonment—if the imprisonment be for a longer period than one year—may be executed in a state prison or penitentiary, the rules of which prescribe hard labor." Both of these cases fairly decide that persons sentenced to imprisonment only may be subject to hard labor, if the rules of the jail or prison exact of the inmates such discipline and treatment.

Therefore, if it be conceded that hard labor was not imposed in this case as a punishment, yet, within the decisions of the United States supreme court, the sentence of imprisonment may be executed in the city prison, the rules of which prescribe hard labor for discipline and treatment. Further, we have industrial and reform schools in the state where incorrigible girls and boys, who disregard the commands of their parents, or resort to immoral places or practices, may be confined. Labor, to a reasonable degree, is properly exacted

from such girls and boys as a part of the discipline and treat-
ment of these institutions.  It is not imposed in all such
cases as a punishment for crime, yet I do not believe it will
be contended that the labor so exacted can be denominated
"involuntary servitude" within the meaning of the constitu-
tution.  (Pub. Doc. 1891–'92, vol. 2, Report of State Board
of Charities, pp. 4, 55, 86, 124.)  Many of the inmates in
the deaf and dumb institution are required to work at print-
ing, cabinet making, shoemaking, and harness making, and
even in the asylum for imbecile youth children are compelled
to perform physical labor.  (Pub. Doc. 1891–'92, vol. 2, Re-
port of State Board of Charities, pp. 4 and 5.)

If the trustees and superintendents of charitable institu-
tions have no authority to compel any boy or girl confined
therein to perform labor contrary to his or her will, such a
ruling would forbid all reasonable rules for the discipline or
good health of the inmates.  It is a trite saying that "Lazi-
ness begins in cobwebs and ends in iron chains," and, there-
fore, it is not favored either in our reformatory or penal
institutions.  Of course, all labor imposed as discipline, or as
a measure of health, must be reasonable and suitable for the
age, the sex, and the condition of the person from whom it is
exacted.  If not of this character, the courts may interfere
and correct any abuse.  In the McCort case, *supra,* the pris-
oner complained because he was not permitted to work for
the city, so that his fine might be discharged.

Again, the ordinance may be upheld along the line of those
decisions which make imprisonment and hard labor a part of
the punishment or penalty, or "the means of enforcing the
collection of fines" imposed for the preservation of order and
the welfare of society.  The statute expressly provides that
"it shall be part of the judgment that the defendant stand
committed till the judgment be complied with."  (Gen. Stat.
of 1889, ¶ 609; *In re McCort, supra; In re Lewis,* 31 Kas.
71; *Ex parte Bedell,* 20 Mo. App. 125; *Berry v. Brislan,* 86
Ky. 5; *The State v. Peterson,* 38 Minn. 143; *Huddleson v.
Ruffin,* 6 Ohio St. 604; *In re Long,* 87 Ala. 46; *Gady v. The*

*State*, 83 id. 51; *Ex parte Sing Ah Tong*, 84 Cal. 165; *Preston v. City of Louisiana*, 7 Ky. Law Rep. 797; *Slaughterhouse Cases*, 16 Wall. 68; *Vanvabry v. Staton*, 88 Tenn. 334.) In the last case, it was stated that "the fine and costs imposed in a misdemeanor case are imposed as punishment. If the prisoner cannot pay or secure them, then he must pay them by his labor in the workhouse, at the rate of 25 cents per day, in addition to his jail fees. This is the process of the law for the payment of such fines and costs."

In answer to the suggestion that the sentence of the police judge did not impose or include "confinement at hard labor," and, therefore, that it cannot be exacted, the case of *Holland v. The State*, 23 Fla. 123, is directly in point. The syllabus of that case reads:

"A statute authorizing the county commissioners to employ at hard labor upon public works all persons imprisoned in the jails of the several counties under sentence upon conviction of crime, or imprisonment for failure to pay fine and costs, is not rendered unconstitutional or made the exercise of a judicial function by the fact that it does not contemplate that its terms shall be pronounced as a part of, or incorporated in the record of, the sentence of the court, or by the fact that they are not so pronounced or incorporated."

Mr. Justice Raney, in delivering the opinion, observed:

"Whenever any express sentence of imprisonment in the county jail, or any sentence of fine and costs for the nonpayment of which a prisoner will be confined in the county jail, is rendered, such prisoner becomes as much subject to the enforcement of the provisions of the act in question as if the provisions were set out in the sentence. The judgment of the law is, as a result and legal consequence of the sentence of imprisonment, that he is liable to the provisions stated, if the county commissioners see fit so to employ him, and, as a legal consequence of the sentence of fine and costs, that he will, if he does not pay them, be liable to the enforcement of such provisions upon being put in the county jail. That the legislature can provide that persons who may be so convicted of crime shall be sentenced and made to labor, is not denied; and we know of no reason why the legislature cannot provide that a legal sentence shall have, as to offenses committed

subsequently to its enactment, a certain legal effect, although the effect is not declared in the body of the sentence."

See, also, *Foster v. Territory*, 1 Wash. 411; *People v. Degnen*, 54 Barb. 105; 6 Abb. Pr. (N. S.) 87. In this case, the police judge sentenced the defendant to the city prison for the nonpayment of the fines assessed against him. Ordinance No. 91, authorizing prisoners committed to the city prison for nonpayment of fines or penalties to work, was then in force, and a part of the city by-laws. The provisions of this ordinance ought, in my opinion, to be construed in connection with the sentence imposed. The sentence carried with it all the effect which the ordinance of the city then in force gave to it; and the sentence, by its legal effect, made the provisions of the ordinance requiring labor to be performed a part thereof. Both the police judge and the defendant understood, within the provisions of the statute and the ordinances, that the sentence had this effect. In this connection, I refer to the following language of Lurton, J., in *Durham v. The State*, 89 Tenn. 723:

"The imposition of labor as a means of discipline and a measure of health is neither cruel nor unusual. It operates, when rightly regulated, as a mitigation rather than an aggravation of the punishment involved in imprisonment. The prisoner may be disgraced and degraded by his punishment, but he cannot ascribe his degradation to his labor. To a certain degree it compels crime to support itself, and in many ways the power to require convicts to labor is a valuable addition to the forces of law and order."

This case is not within the decision of *Jaremillo v. Romero*, 1 N. M. 190, where compulsory service exacted from a "peon" or a servant for the payment of an ordinary debt to his master is denounced and forbidden. About all decided in *Ex parte Wilson*, 114 U. S. 407, is, that a crime punishable by imprisonment under the constitution and laws of the United States for a term of years at hard labor is an infamous one, and that no person can be lawfully convicted therefor except upon the presentment or indictment of a grand jury.

In conclusion, it is perhaps unnecessary for me to say, in view of what is stated in the principal opinion, that the constitution of the state forbids cruel or unusual punishments, and the courts have ample power to prevent such punishments from being inflicted. In making arrests and in the treatment of prisoners, in or out of city prisons, no police or other officer is justified in using unnecessary harshness or excessive violence. If any policeman, to magnify his office or to exaggerate his importance, or for any other insufficient reason, transcends his power in this respect, he may be mulcted in damages and also criminally punished; but a person who has been lawfully arrested is bound to submit himself peaceably and go quietly with the officer.

JOHNSTON, J.: I concur in the views expressed by the chief justice, and also in all said by Mr. Justice ALLEN, except that part of the opinion which holds that the ordinance authorizing the employment at labor of prisoners committed to the city prison for nonpayment of fines is invalid.