CITY OF ST. LOUIS to use of MARY DUFF, Respondent, v. NICHOLAS KARR et al., Appellants.

St. Louis Court of Appeals, November 20, 1900.

1. **False Imprisonment: DAMAGES: CITY ORDINANCE OF THE CITY OF ST. LOUIS: DUTIES OF SUPERINTENDANT OF CITY WORKHOUSE: RULE OF DISCIPLINE: CONSTRUCTION OF ORDINANCE: BILL OF RIGHTS: DUE PROCESS OF LAW.** Section 1814 of the Revised Ordinances of the City of St. Louis attempts to confer upon the superintendent of the city workhouse the power, under the guise of enforcing a rule of discipline, to judicially convict, sentence and confine a prisoner in the institution beyond the maximum period prescribed by the charter, and so much of this ordinance as authorized the superintendent to not allow credit for any days of service in the workhouse against the time of imprisonment for which the offender was convicted, violates the city charter, violates section 30 of our Bill of Rights, in that it deprived the citizen of her liberty without due process of law.

St. Louis v. Karr.

2. ——: ——: ——. When the superintendent of the work-house confined the prisoner beyond six months, he did so in disobedience of the city charter, and the command of the writ of commitment, and took upon himself the risk of the validity of the ordinance under whose provisions he acted.

3. ——: ——: ——: JUDICIAL AUTHORITY. He assumed and exercised the judicial authority from time to time, of finding the respondent guilty of a violation of prison rules, and for such violations assessed against her punishment by imprisonment in the workhouse and himself kept her there.

4. ——: ——: ——: POWER TO IMPRISON. The power to imprison must be plainly given, it must be conferred upon a judicial officer, and when exercised, it must be done judicially according to due course of law.

Appeal from the St. Louis City Circuit Court.—*Hon. Franklin Ferris,* Judge.

Affirmed.

*B. Schnurmacher* and *Chas. Claflin Allen* for appellants.

(1) The city of St. Louis is authorized to acquire and maintain a workhouse. Charter, art. 1, sec. 1; art. 3, sec. 26, clause 3. (2) And to confine therein violators of the city ordinances who may fail or refuse to pay the fines or penalties imposed against them or a breach of such ordinances. Art. 3, sec. 26, clause 10. (3) The power thus expressly conferred upon the city to imprison offenders against its laws, carries with it, as an implied incident, everything necessary to make that power effectual; in this case the power to make needed rules and regulations of prison discipline. Ulrich v. St. Louis, 112 Mo. 138. (4) The ordinance was an exercise of police regulation, and the officer

in enforcing it was discharging a public and governmental function for the city, for the consequences of which he is not liable, though the ordinance be void.   Worley v. Columbia, 88 Mo. 106; City of Caldwell v. Prunelle, 57 Kan. 511. (5)   Finally, we submit that the ordinance was an exercise, or at least an attempted exercise, by the city of St. Louis, of police regulations and that the defendant Karr, in undertaking in good faith to enforce it, was exercising a public or governmental function for the city, for the consequences of which neither he nor the city is liable, even though the ordinance be void.   Worley v. Columbia, 88 Mo. 106.

*Daisy D. Barbee* for respondent.

(1)   The city of St. Louis is authorized to acquire and maintain the workhouse, and to confine therein violators of the city ordinances who may fail or refuse to pay the fines or penalties imposed against them for a breach of such ordinances; but the right to imprison does not confer the right to violate the plain terms of the charter of the city.   And, further, the right to make rules and regulations of prison discipline does not confer the right on the municipality to imprison, by order of workhouse keeper, without due process of law. (2)   Rights guaranteed to a citizen by the constitution can not be abridged by legislation under the guise of a police regulation.   State v. Julow, 129 Mo. 163; Millett v. The People, 117 Ill. 294; People v. Gillson, 109 N. Y. 389; In re Jacobs, 98 N. Y. 98.   (3)   Imprisonment for an offense committed while in confinement, to be lawful, must be under information and trial by judge or jury, and not upon the arbitrary order of an employee of the city of St. Louis.   No person shall be deprived of life, liberty or property without due process of law.   In re Thompson, 117 Mo.

83.   (4)   The officers of a city have such powers, and only
such powers, as are conferred upon them by the charter.
They are bound by its terms.   Forry v. Ridge, 56 Mo. App.
615; Ruggles v. Collier, 43 Mo. 353.   (5)   An unconstitu-
tional law is void, and is as no law.   Ex parte Smith, 135
Mo. 223; Ex parte Siebold, 100 U. S. 371.

BLAND, P. J.—Respondent brought her action against
Nicholas Karr, formerly superintendent of the workhouse
of the city of St. Louis, and his sureties on his official bond,
to recover damages for false imprisonment in the workhouse.

On June 8, 1898, respondent was convicted of the vio-
lation of a city ordinance of the city of St. Louis and her
punishment was assessed by the police court at a fine of $100
In default of payment of the fine she was committed by the
court to the workhouse, where she was retained by Karr, the
superintendent of the workhouse, for more than six months,
and until she was released from her imprisonment on May
2, 1899, by writ of *habeas corpus.*

Respondent recovered a judgment in the circuit court.
Karr and his sureties appealed.

1.   To justify the detention of respondent beyond the
period of six months appellants rely upon clause 10 of section
26 of article 3 of the city charter and sections 1806, 1807
and 1814 of the city ordinances.   Clause 10, section 26, ar-
ticle 3 of the charter provides, among other things, that
"any offender who shall neglect or refuse to pay the fine,
penalty or costs imposed upon him or her (on conviction of a
violation of a city ordinance), shall be committed to the
workhouse until such fine, penalty and costs be fully paid,
with this proviso, that "no such imprisonment shall exceed
six months for any one offense."   The ordinances relied on
are as follows: .

"Section one thousand eight hundred and six: The superintendent shall keep all persons committed to the workhouse employed at such useful and profitable labor as their health and strength will permit, ten hours each day; but no prisoner shall be required to work before sunrise or after sunset, except in extraordinary cases, and then he shall be allowed extra pay at the rate of fifteen cents per hour.

"Section one thousand eight hundred eleven: Any person who shall refuse to work, or who shall behave in a riotous or disorderly manner, or shall resist or attempt to escape from the workhouse, may be committed to close and solitary confinement and may be fed on bread and water until he consents to perform his duty; and may, if necessary, be put in irons; but the board of public improvements shall have power to control the superintendent in the extent and manner of punishment.

"Section one thousand eight hundred fourteen: Any prisoner who may be placed in solitary confinement, or may refuse to perform his task, shall not be allowed a credit for the time of such confinement or refusal; and the cost of his boarding during the time of such confinement or refusal shall be added to the amount for which he was committed, and worked out by him. If any prisoner shall be sick and unable to work, he shall be allowed his time as though he had worked; but the amount of his board shall be charged to him. If the weather should be so inclement that the prisoners can not work, those who can not be kept at work for that reason shall, nevertheless be allowed a credit as though they had worked, but their board for such time shall be charged to them."

The evidence is that the respondent refused to work, and that she was a riotous and disorderly prisoner; that solitary confinement and a diet of bread and water were ineffectual

to calm her turbulent disposition or to induce her to work; that her detention beyond the term of six months was for the purpose of makng up the days for which she had received no credit as a prisoner on account of her misconduct and refusal to work, and it is admitted that the superintendent's action in detaining her for more than six months was to enforce the rule of discipline prescribed by section 1814 of the ordinances requiring the superintendent to disallow time credit against the term of imprisonment for any day or days the prisoner was placed in solitary confinement for misconduct, or had refused to work, and that if this provision of the ordinances prescribes a reasonable rule of prison discipline and is within the power of the legislature of the city to pass them, the detention of respondent by Karr beyond the period of six months was justifiable, there being no element of malice in the case.

That the city may by ordinance make reasonable rules of discipline for the government of the inmates of the workhouse, is beyond question. Ulrich v. St. Louis, 112 Mo. 138. A rule of discipline requiring the prisoners in that institution to labor, is a reasonable rule both for discipline and for sanitary reasons. In Ex parte Mills, 135 U. S. 263, it is said, that "although the punishment provided for crime be imprisonment merely, that nevertheless where the defendant may be sentenced under a Federal statute to a state's prison or penitentiary, he may be put to hard labor under such sentence, if that be one of the rules of discipline and treatment in such prison." In the case of the City of Topeka v. Boutwell, 53 Kan. 20, the court ruled that incorrigible girls and boys, who, for disregarding the commands of their parents, were committed to the industrial and reform schools of the state, might be compelled to labor to a reasonable degree as a part of the discipline and treatment of these

institutions; that labor under the circumstances could not be called involuntary servitude within the meaning of the constitution. The character and disposition of persons convicted of crime and sentenced to servitude in penal institutions are such as to require the enforcement of stringent and sometimes severe rules of discipline to preserve order and decorum and to enforce rules of discipline. But section 1814 of the ordinance does more than this; it in effect confers upon the superintendent of the workhouse the power, under the guise of enforcing a rule of discipline, to judicially convict, sentence and confine a prisoner in that institution beyond the maximum period prescribed by the charter; and so much of this ordinance as authorized the superintendent to not allow credit for any days of service in the workhouse against the time of imprisonment for which the offender was convicted, violates the city charter, violates section 30 of our Bill of Rights, in that it authorized the superintendent of the workhouse to deprive a citizen of her liberty without due process of law (State v. Julow, 129 Mo. 163), and is for these reasons void.

2. It is not claimed that Karr, in detaining the respondent over time, was actuated by malice, and it is conceded that his proceedings were in accord with the provisions of the ordinance. On this state of the case appellants contend that notwithstanding the invalidity of the ordinance, Karr is not liable to respond in damages for the wrongful detention of the respondent, for the reason that he was a city officer, and as such was not bound to inquire into the constitutionality of the ordinance, which he took for his guide. In support of this contention counsel for appellants cite the following cases: Tillman v. Beard (Mich.), 3 Mun. Corp. Cas. 246; Brooks v. Mangan, 86 Mich. 576, and Worley v. Columbia, 88 Mo. 106. In the Tillman case it was held,

that "if one merely lays a criminal complaint before a magistrate in a matter over which the magistrate has a general jurisdiction and the magistrate issues a warrant upon which the person charged is arrested, the party laying the complaint is not liable for an assault and false imprisonment, although the particular case may be one in which the magistrate had no jurisdiction. And by analogy that a party in good faith procuring an arrest for violation of a void ordinance does not thereby render himself liable to damages. In the Brooks case it was held that a policeman who committed a party to prison on a commitment, fair upon its face, issued by a magistrate having jurisdiction of the person and subject-matter, was not held liable to respond in damages, because it turned out that the ordinance for a violation of which the party was convicted and committed, was unconstitutional, and that the magistrate was not liable for damages because he honestly adjudged the ordinance constitutional, when in fact it was unconstitutional. A ministerial officer in *this state,* whose duty it is to execute court process, is not bound to look behind the writ put in his hands for execution; if that is fair upon its face and the court issuing it had jurisdiction of the subject-matter and of the person, he is protected, however unlawful may have been the proceedings that preceded the issuance of the writ. Merchant v. Bothwell, 60 Mo. App. 341; Woolridge v. Rentschler, 62 Mo. App. 591; Mayor v. Opel, 49 Mo. 190; Brown v. Harris, 52 Mo. 306; State to use v. O'Neil, 151 Mo. 67; St. L. & S. F. R. R. Co. v. Lowder, 138 Mo. 533. Neither is a party, who in good faith makes a complaint for violation of a law or ordinance, required to take the risk of being mulct in damages if courts afterwards declare the law or ordinance unconstitutional. Marks v. Townsden, 97 N. Y. 590; Langford v. Railroad, 144 Mass. The Worley case holds that a municipal corpora-

tion is not liable for a trespass committed by its officers in the enforcement of a void ordinance. The police officer was not a party to the suit, and his liability, if any, is not discussed or passed on by the opinion. None of these cases are analogous to the case in hand. Karr was not a magistrate, nor a police officer of the city, but the keeper of a public prison house. His official relations to the city were similar to those of the keeper of a common jail to the county of which he is jailer. He, as superintendent of the workhouse, was bound to receive the respondent and confine her on the commitment issued by the police justice, the commitment being fair upon its face and issued by a magistrate having jurisdiction of the subject-matter and the person of the respondent, he was not required to go behind the commitment to see if the respondent had been lawfully convicted, or to see that the ordinance under which she was convicted was valid. If it had turned out that the ordinance was void or the conviction unlawful, he could not have been held to respond in damages for false imprisonment—the commitment protected him against such a claim. But the void ordinance under which he detained respondent over time does not afford the same protection as the writ of commitment. The charter which is above the ordinance, limiting the period of imprisonment to six months, Karr was bound to take notice of, as much so as if it had been copied into the writ, for he was commanded by the writ to keep her until she should be discharged by law, that is by paying the fine and costs, or by serving a term not to exceed six months. When he confined her beyond the six months, he did so in disobedience of the city charter and the command of the writ of commitment, and took upon himself the risk of the validity of the ordinance under whose provisions he acted. He assumed and exercised the judicial authority, from day to day, and from time to

time of finding the respondent guilty of a violation of prison rules, and for such violations assessed against her punishment by imprisonment in the workhouse and himself kept her there. No state or city in this country has, or ever had the authority to confer upon any one the exercise of such an arbitrary and unheard of power, and it can no more be done under the guise of an ordinance prescribing a rule of prison discipline, than it can be conferred by a direct and positive act of the legislature. The power to imprison must be plainly given, and when given, it must be conferred upon a judicial officer, and when exercised it must be done judicially according to due course of law. State v. Julow, *supra;* Bolton v. Vellines, 94 Va. 393. This case is without precedent or analogy in any adjudicated case to which our attention has been called. If it be conceded (which we do not do), that an ordinance gives to a police officer, or one whose duty it is to enforce it, the same protection as does a judicial writ, fair on its face, to the ministerial officer who receives it for execution, the ordinance in hand affords no such protection to Karr, for the reason that its invalidity is patent on its face. The imprisonment complained of was without the semblance of authority and in violation of the fundamental law of the land. Wherefore the judgment of the circuit court is affirmed. All concur.