## PEARSON *v.* WIMBISH.

1. The present constitution of this State does not guarantee a trial by jury to one charged with the violation of a valid municipal ordinance, but he may be summarily tried and convicted, without a jury, in a police court having jurisdiction to try petty offenders against the peace, good order, and security of the municipality.

2. To punish such an offender by confining him at labor under municipal control is not obnoxious to the constitutional inhibition against "involuntary servitude, save as a punishment for crime, after legal conviction thereof."

3. The constitutional declaration that no person shall be deprived of his liberty without due process of law does not contemplate that a petty offender who may be tried summarily without a jury shall be furnished with a formal accusation or written statement of the charge preferred against him; it is sufficient if he be given timely information of the nature of the charge and be afforded full opportunity to present his defense.

4. A recorder of a city may try offenders against the municipal ordinances and impose on them such sentences as are authorized by law. But where one charged with the infraction of a municipal ordinance is sentenced to confinement for three months in the county chain-gang, along with violators of the laws of the State, upon conviction by the recorder alone and without a right to a trial by a jury, and with no record except certain entries upon the recorder's docket (stating a case of the city against the defendant, the offense with which he was charged, the name of the arresting officer, and that after hearing the evidence it was ordered that the defendant be committed to the county chain-gang for the space of three months), such sentence is in violation of the constitution, which declares that no person shall be deprived of life, liberty, or property, except by due process of law. A provision in a municipal charter which authorizes punishment for offenses against the ordinances of the city by confinement of the offender in the chain-gang of the county, where persons convicted of misdemeanors against the State and felons whose punishments have been reduced are confined, is unconstitutional.

Argued December 18, 1905.—Decided January 13, 1906.

Habeas corpus.   Before Judge Felton.   Bibb superior court. November 3, 1905.

An application for the writ of habeas corpus was presented to the judge of the superior court of Bibb county, in behalf of Rufus

Pearson, who was alleged to be held and restrained of his liberty by E. A. Wimbish, superintendent of the Bibb county chain-gang, under a pretended sentence and commitment of the recorder's court of the City of Macon, imposing upon the applicant the infamous punishment of being confined at hard labor in the chain-gang of that county for the term of three months. It was alleged, that on October 28, 1905, Pearson was arrested, without a warrant, by a police officer of the city and committed to the city prison, where he was detained until the morning of the 30th of October, when he was taken before the city recorder and, without any written charge, information, or accusation being furnished him, brought to trial without the benefit of counsel and without the right to demand or have a jury pass upon his guilt or innocence; that after a pretended trial before the recorder, the sentence above stated was passed upon the applicant, and thereupon the recorder made out a writ of commitment, placing him in the custody of the superintendent of the Bibb county chain-gang, who on the same day took charge of his person, manacled him in irons, which were riveted around his legs, clothed him in penitentiary stripes, and put him at hard labor on the public roads of the county. It was further alleged that the Bibb county chain-gang was composed of the quota of felony convicts allotted to the county by the State under the act approved August 17, 1903; of convicts who had been convicted of a felony, but had been sentenced as for a misdemeanor under the provisions of the Penal Code, §§ 1036, 1037; of misdemeanor convicts, and of offenders summarily tried and convicted in the recorder's court. The charge brought against the applicant was that of being drunk and disorderly, in violation of a city ordinance declaring that "Any person who shall be found in the streets drunk, or acting in a disorderly, riotous, or tumultuous manner, . . shall be arrested by the officers of the police force and confined in the city prison until such time as he can be brought before the recorder, to be dealt with as he may think proper and necessary." The act of November 21, 1893, in so far as it undertook to authorize the recorder to sentence offenders to the county chain-gang, was attacked as unconstitutional and void, on the grounds, that (1) an offender against a municipal ordinance, who is sent to the county chain-gang under the provisions of that act, is "deprived of his liberty, convicted of an infamous crime, and sentenced to an infamous punishment," without

having a written accusation preferred against him or having the benefit of counsel, and without the right to have his guilt or innocence determined by the verdict of a jury of his peers, contrary to the provisions of the constitution of the State of Georgia and of the fourteenth amendment to the constitution of the United States, guaranteeing to every one accused of a criminal offense that he shall not be convicted thereof without due process of law; (2) because such a sentence as that imposed upon the applicant subjects one found guilty of a mere petty offense, less than a crime, to involuntary servitude, contrary to the inhibition contained in our State constitution, as well as in the thirteenth amendment to the Federal constitution; (3) because such a sentence, when imposed for such a minor offense, subjects the offender to a cruel and unusual punishment, in violation of the rights guaranteed to him by par. 9 of art. 1, of the constitution of this State, and deprives him of the equal protection of the law, assured to him by the fourteenth amendment to the constitution of the United States; and (4) because conviction in a municipal court, when followed by such a sentence, offends the provisions of par. 1, sec. 18, art. 6 of the constitution of Georgia, which preserves the right of trial by jury to every one accused of a criminal offense, which an infraction of a municipal ordinance necessarily becomes when the punishment visited upon the offender is the same as that imposed upon one found guilty of an infamous crime. The applicant declared that neither under any act of our General Assembly, nor under any ordinance of the City of Macon, were any rules of procedure established for the recorder's court such as preserved the constitutional rights of one charged with a penal offense, either in the first instance or upon appeal; and that his conviction in that court, in accordance with the practice which therein obtained, was a mere nullity.

The writ of habeas corpus was issued, and in response thereto the official to whom it was directed answered, in substance, as follows: The arrest of Pearson, without a warrant, was authorized by law. On the hearing before the recorder's court, the charge against him was read to him; he was asked if he was ready for trial, and he replied "Yes." He was given ample notice of the offense with which he was charged, and also given full opportunity to make any defense he might have. After being put upon full notice of the charge against him, witnesses were sworn and examined in the case;

and after the evidence for the prosecution had been heard, he was told that he could make any statement in his own defense which he wished, and he availed himself of the privilege of making a statement. Thereupon he was convicted by the court, which was a police court for the City of Macon, having jurisdiction to try violators against the municipal laws in a summary manner; and he was arrested, tried, and convicted in the same manner as all other persons charged with similar violations of law are arrested and tried in the recorder's court. He was subsequently confined in the Bibb county chain-gang, but not clothed in penitentiary stripes; and respondent, as the superintendent thereof, now holds him in custody, by virtue of the commitment issued by the recorder's court, after due and legal conviction therein, and after Pearson had been accorded a fair and impartial trial. No traverse of this answer was filed, but on the hearing in the court below the facts therein recited were recognized as true, taken in connection with an agreed statement of facts as to what appeared by the docket entries in the recorder's court and as to how the chain-gang of Bibb county was conducted. These entries gave the number of the case and the date on which it was docketed, as well as the date of the arrest and the name of the arresting officer; defined the charge as "drunk and disorderly," and recited that after hearing the evidence in the case it was ordered by the court that the defendant be committed to the county chain-gang for and during the space of three months. The commitment, a copy of which was attached to the petition for habeas corpus, formally stated the character and situs of the recorder's court, and styled the case as that of "The Mayor and Council *vs.* Rufus Pearson," and the offense to be "drunk and disorderly;" recited that upon hearing the evidence in the case, the defendant was found guilty, whereupon it was ordered and adjudged by the court that the said defendant, then present in court, "do work in the chain-gang" of the county for the term of three months, "to be computed from the date he is received by the superintendent of the public works," and that in the meantime he be committed to the city barracks. It purported to have been issued in open court, was dated October 30, 1905, and was signed: "Custis Nottingham, Recorder of the City of Macon."

After hearing argument, the court below passed an order refusing to discharge the petitioner and remanding him to the custody of the

respondent. To this order Pearson excepted, and in this court he urged all of the grounds of attack upon the conviction and sentence in the recorder's court which he presented to the judge of the superior court in the petition for habeas corpus. The plaintiff in error takes the position that, under the facts admitted by the answer and the agreement of counsel, his discharge from further custody was demanded.

*Glawson & Fowler* and *Akerman & Akerman,* for plaintiff.
*Minter Wimberly* and *Jesse Harris,* for defendant.

EVANS, J. (After making the foregoing statement of facts.)

1. In most, and perhaps in all, of the constitutions of the different States there is contained the phrase, "the right of trial by jury shall remain inviolate," or words of similar import. With striking unanimity this and equivalent expressions have been construed to mean that the right of trial by jury as it existed in the colonies prior to the Revolution should be preserved. The privilege was not enlarged, nor was the right extended to instances where summary trial without a jury was authorized and practiced. This construction has been given to the guaranty of jury trial as contained in the first and all subsequent constitutions of this State. *Flint River Steamboat Co.* v. *Foster,* 5 *Ga.* 195 (7). Clearly, then, that clause of the constitution: "The right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate, but the General Assembly may prescribe any number, not less than five, to constitute a trial or traverse jury in courts other than the superior and city courts" (Civil Code, §5876), is only preservative of jury trial as it existed when Georgia became an independent State and a part of the United States, except as modified in the present constitution. As was said by Jackson, C. J., in *Hill* v. *Dalton,* 72 *Ga.* 319, "such or equivalent provisions in the constitution of the United States and all the constitutions of this State have never been held to apply to police of cities and towns and arrests and trial, with fine and imprisonment therein, under ordinances thereof." "In England, violations of municipal by-laws, where the penalty is a fine or by authority of parliament a fine and imprisonment, have always been prosecuted in a summary manner, although magna charta secures the right of trial by jury." 1 Dill. Mun. Corp. §433. Municipal offenses usually are confined to breaches of by-laws and ordinances

45

which in their nature are mala prohibita, and which by legislative sanction have been enacted by the municipality for its health, peace, and tranquility. The offenses are petty in their nature, and in this State have always been prosecuted without a jury. While it may be doubted that the legislature may delegate to a municipality the right to declare certain acts offenses against the corporation, and offenders thereof constitutionally subject to summary trial, it is very generally held that the transgression of municipal regulations enacted under the police power for the purpose of preserving the health, peace, and good order, and otherwise promoting the general welfare within cities and towns, may be prosecuted without a jury. McInnery *v.* Denver, 17 Colo. 302; Byers *v.* Com., 42 Pa. St. 89; In re Kinsel (Kan.), 67 Pac. 634; Callan *v.* Wilson, 127 U. S. 540; Mayor of Monroe *v.* Meuer, 35 La. Ann. 1192; Natal *v.* Louisiana, 139 U. S. 621; State *v.* Conlin, 27 Vt. 318; Goddard *v.* State, 12 Conn. 448; *Williams* v. *Augusta,* 4 *Ga.* 509; *Floyd* v. *Eatonton,* 14 *Ga.* 354; *Hill* v. *Dalton,* 72 *Ga.* 319. At common law, such disorderly offenses as common swearing, drunkenness, and a vast variety of others, formerly punished by a jury in the court-leet, were summarily tried by a justice of the peace, without a jury. 4 Bl. Com. *281. Offenses of this kind, as well as all others which were summarily triable without a jury in this State in colonial times, are cognizable in a police court, which, under our system of jurisprudence, is the forum in which such petty offenses may be tried.

But it is urged that while one summarily tried and convicted of a petty offense might be punished by fine or imprisonment, either or both, he could not be punished by imprisonment and involuntary servitude. The reply to this argument is obvious: if the offense was of such a character as to be summarily tried without a jury at the time of the adoption of the constitution, the legislature might authorize any suitable penalty not antagonistic to the organic law. Whether the penalty by involuntary labor on the public works in the chain-gang of Bibb county is violative of any provision of the United States or State constitution will be discussed in a later part of this opinion.

Another clause of the constitution is invoked as providing a constitutional guaranty of trial by jury even for petty offenders. "Every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel; shall be fur-

nished, on demand, with a copy of the accusation, and a list of the witnesses on whose testimony the charge against him is founded; shall have compulsory process to obtain the testimony of his own witnesses; shall be confronted with the witnesses testifying against him, and shall have a public and speedy trial by an impartial jury." Civil Code, § 5702. It is first to be determined whether the violation of a municipal ordinance is an "offense against the laws of this State." All the authorities concur that it is within the constitutional power of the legislature to confer upon a municipality authority to make reasonable by-laws, rules, and ordinances, necessary for the security, welfare, and convenience of the city, for preserving peace, order, and good government within the same, not repugnant to the constitution and laws of the land. *Vason* v. *Augusta*, 38 *Ga.* 542. There is a clear distinction between offenses against the "laws of the State," directly enacted by the legislature, and offenses against the ordinances of a city, respecting the method of prosecuting and punishing offenders against the same. *Hood* v. *Von Glahn*, 88 *Ga.* 414. This particular clause first appeared in the constitution of 1861, and again in the constitution of 1868. The framers of the constitution most probably had this distinction in mind, which was made in *Williams* v. *Augusta*, supra (decided in 1848), when this clause of the constitution was drafted. If a jury trial had been intended for all persons accused of crime, or for all offenders of the penal laws, whether of a general character affecting the whole State and directly enacted by the legislature, or municipal ordinances confined to offenses against the health, peace, and good order of a city, the restrictive words, "offense against the laws of this State," would hardly have been employed. These words should be given their ordinary signification; and when thus interpreted, the safeguards thereby guaranteed apply to persons charged with a violation of one of the criminal statutes designed to protect the public at large, and not to offenders against the ordinances of a town or city. To extend the language of the constitution to embrace offenses against a municipality, which were never triable by a jury, would be to attribute to the framers of that instrument an intent and purpose really never entertained by them. Neither of the clauses of the constitution above quoted extends the right of trial by jury to a person accused of a violation of a municipal ordinance, and such offenders may be summarily tried in a police court without a jury.

2. It does not necessarily follow, because in the prosecution for the violation of an ordinance in a police court the offender is not entitled to a trial by jury, that the offense committed is not a "crime" in the sense in which that word is used in the constitution, art. 1, sec. 1, par. 17, forbidding "slavery or involuntary servitude, save as a punishment for crime after legal conviction thereof." This constitutional prohibition was directed against any attempt to re-establish slavery, which had but recently been abolished, or any system of servitude resembling the same. Mayor of Monroe v. Meuer, 35 La. Ann. 1192. The word "crime" was used in its generic sense, and comprehended all penal offenses — offenses against the ordinances of a municipality as well as offenses against the penal laws of the State. In many jurisdictions a summary proceeding to enforce the penalty for the infraction of an ordinance has been characterized as a "quasi criminal" action. In the early cases of *Williams* v. *Augusta* and *Floyd* v. *Eatonton,* supra, language to this effect was used arguendo. But, as was pointed out by Fish, J., in *Barnett* v. *Atlanta,* 109 *Ga.* 169, the question presented for determination in those cases was the meaning of the term "criminal cases," as used in that clause of the constitution of 1798 which gave to the superior courts exclusive jurisdiction in all criminal cases, except as therein provided; and it was held that reference was had to violations of the public laws of the State, and not to infractions of municipal ordinances. A valid municipal ordinance is a law of local application; an offense against the city results from its violation. *McRea* v. *Americus,* 59 *Ga.* 170. It is penal in its nature; otherwise an offender could not be arrested and taken in custody for its violation. Infractions of municipal ordinances are always termed petty offenses. An offense against the law is a "crime," in the broad meaning of that word. It is none the less an offense because the offender may constitutionally be tried in a police court without a jury. The clause of the constitution which is preservative of trial by jury is applicable both to civil and criminal cases. It does not include petty offenses of the character we have discussed; neither does it embrace equity causes, which are always classified as civil actions. Equity causes were not tried by a jury when the constitution was adopted, and for this reason it has been held that this clause did not render such cases triable by a jury, as other civil actions. That the right to a jury is denied a suitor in equity

affords no sufficient reason why such causes may not be denominated as civil. Furthermore it would seem an inevitable conclusion that if imprisonment may in the first instance follow conviction, the proceeding is to be regarded as criminal. This court has in several adjudications· treated a trial in a municipal police court as a criminal proceeding. Thus, it was held that the decision of the superior court on certiorari, reversing the judgment of a municipal court convicting one of the violation of a municipal ordinance, is not subject to review by the Supreme Court, because the proceeding was criminal and the city stood in the place of the State. *Macon* v. *Wood,* 109 *Ga.* 149; *Hawkinsville* v. *Ethridge, 96 Ga.* 326. So, also, it was held that a prosecution for a violation of a municipal ordinance is a criminal case within the meaning of the statute requiring that in all criminal cases the bill of exceptions shall be tendered and signed within twenty days from the rendition of the decision excepted to. *Barnett* v. *Atlanta,* supra. See also *Paulk* v. *Sycamore,* 104 *Ga.* 24. The definition of the word "crime" in the Penal Code does not militate with the construction we are giving to that word as used in this clause of the constitution. The Penal Code, § 31, declares that a "crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence;" and that (§ 2) every crime, other than a felony, as therein defined, is a misdemeanor. This definition appertains to the subject-matter of the Penal Code, wherein only offenses against the public laws of the State are considered. Municipal offenses are not treated as violations of public laws, but as infractions of the local laws of the municipality, which have no place in the Penal Code of the State. If, therefore, as we conclude, the violation of a valid municipal ordinance is a "crime"·within the purview of this constitutional provision, notwithstanding it may be summarily prosecuted in a police court without a jury, then a sentence to involuntary servitude as a result of legal conviction is not violative of our organic law.

3. The constitution of Georgia (art. 1, sec. 1, par. 3) declares that "No person shall be deprived of life, liberty, or property, except by due process of law." Civil Code, § 5700. Counsel contend that the accused was deprived of the protection afforded by this clause of the constitution, inasmuch as he was not furnished with a

written accusation setting forth the offense with which he was charged, nor tried by a jury of his peers. We have already endeavored to show that the trial of petty offenses in the recorder's court without a jury is the substantial equivalent of a trial at common law before a justice of such offenses. In those trials before a justice of the peace the offender was not entitled either to a jury or to a written statement of the charge preferred against him. All that was required after his appearance in person was secured was that he should be informed of the charge and should be given an opportunity to defend, that the witnesses be sworn in his presence, and that a record should be made of his conviction. 4 Bl. Com. *283. The common-law courts held that it was necessary to summon the party accused before he was condemned. Blackstone says: "After this summons, the magistrate, in summary proceedings, may go on to examine one or more witnesses, as the statute may require, upon oath; and then make his conviction of the offender, in writing: upon which he usually issues his warrant, either to apprehend the offender, in case corporal punishment is to be inflicted upon him; or else to levy the penalty incurred, by distress and sale of his goods. This is, in general, the method of summary proceedings before a justice." In the case of King *v.* Venables, 2 Ld. Raym. 1405, 1 Strange, 631, it appeared that an order was passed by two justices of the peace, suppressing an ale house, and that subsequently they passed another order, in which the fact was recited that the defendant had continued in violation of the first order to sell ale, whereby he was committed to jail. No summons appeared to have been issued, prior to this last order, calling upon the defendant to show cause why sentence should not be pronounced upon him for his disobedience of the first order; and the case was tried in his absence. On certiorari it was held that in all summary proceedings, of which nature were these orders, a summons was necessary, in order that the offender might be afforded an opportunity to appear and make his defense. But as a justice is punishable if he enters sentence without first summoning the offender to appear before him, the presumption was that summons had been issued, that the justices had jurisdiction and had proceeded regularly. The orders were accordingly affirmed. Afterwards, however, it being made to appear to the court by affidavits that the justices had, in point of fact, proceeded in making the last order without summon-

ing Venables, the court granted leave to file an information against them.

In the present case, the question of the validity of the arrest of the accused is not involved; the contention is that the trial was a nullity, not that his arrest was illegal.   When he was brought before the recorder's court and informed of the charge against him, he was asked if he was ready for trial, and responded in the affirmative; he was afforded an opportunity to make his defense, and the witnesses appearing against him were sworn and testified in his presence, substantiating the charge of which he was accused.   The procedure followed was substantially the same as that pursued at common law before justices of the peace in the summary trial of petty offenders.   Hence, we can not say that the accused was not accorded a trial in accordance with due process of law, because of the failure to prefer a written accusation specifically defining the offense with which he was charged.

In the case of Natal v. Louisiana, 139 U. S. 621, the Supreme Court of the United States held that an ordinance passed under legislative authority by the City of New Orleans, prohibiting the keeping of any private market within six squares of any public market of the city, under the penalty of being sentenced, upon summary conviction before a magistrate without a jury, "to pay a fine of twenty-five dollars and to be imprisoned for not more than thirty days if the fine is not paid, does not violate the fourteenth amendment of the constitution of the United States."   In delivering the opinion of the court, Mr. Justice Gray remarked (p. 623) : "The case is too plain for discussion."   The test which we have applied in determining whether the procedure in the recorder's court of the City of Macon is in accord with due process of law, within the meaning of our State constitution, and the conclusion announced by us, must be considered as sufficiently meeting the contention that such procedure does not conform to due process of law, as understood when the fourteenth amendment to the Federal constitution was adopted.   So far as summary conviction for a petty offense is concerned, that amendment does not guarantee either a jury trial or the formality of furnishing an offender with a written accusation or statement in writing of the charge brought against him.

4. It is further contended that the penalty imposed of labor in Bibb county chain-gang was a denial of due process of law, because

of the nature of the penalty-inflicted. For a person lawfully to be made to suffer punishment as a lawbreaker, there must be not only process of law but due process. Process which may be sufficient to authorize punishment for petty offenses by fine, imprisonment for a reasonable time in the city barracks (or even to work upon the public works of a city, if there be in the charter any authority to impose such a sentence as confinement at labor under municipal control), will not suffice for sending a person to a county chain-gang for several months. When the punishment imposed is the same, or of the same nature, as that inflicted upon offenders against the laws of the State, and to be suffered in company with them, due process requires a trial to some extent analogous to the trial of persons accused of misdemeanors against the State. To call the offense "petty" for the purpose of trial, but as serious as a violation of a State law for the purpose of punishment, is inconsistent. If the punishment is of the same character as that imposed for a State offense, the infraction of the municipal ordinance can not be called a "petty" offense in comparison with one against the State. A sentence of a city recorder, without a right to a trial by a jury and with no more formal procedure than an entry on a docket, which subjects the prisoner to work in a county chain-gang for three months, along with persons duly convicted of the violation of State laws, is not due process. It is declared in the Penal Code, § 1036, that all felonies, save those therein enumerated, "shall be punished by imprisonment and labor in the penitentiary for the terms set forth in the several sections in this code prescribing the punishment of such offenses; but on the recommendation of the jury trying the case, when such recommendation is approved by the judge presiding on the trial, said crimes shall be punished as misdemeanors. If the judge trying the case sees proper, he may, in his punishment, reduce such felonies to misdemeanors." Even if those regularly convicted of felonies, but who are left in the custody of the county authorities, be kept separately, nevertheless those falling within the provisions of the Penal Code above referred to are detained in the county chain-gang. If a person who is convicted of some petty municipal offense can, after trial before the recorder, be sent to the county chain-gang, he would not only be sentenced to a punishment similar in its nature and character to that imposed for misdemeanors against the State, but he would be placed in di-

rect association with, and be confined along with, felons whose pun-
ishments have been reduced under recommendation. It can not be
that such a sentence can be imposed in Georgia by one man alone,
trying a criminal case. If the sentence can be for three months in
the county chain-gang, it may be for six or twelve months, if the
legislature should permit it. In fact, where would be the limit of
legislative power to prescribe the extent of punishment to be meted
out on the sentence of a recorder? It is not a question of the person
who may be subjected to such a punishment; it is a question of
whether our organic law has entrusted such arbitrary power of
punishment to be imposed, even upon the humblest citizen, by a
municipal recorder sitting alone. The entrusting of such power of
punishment for so-called petty offenses to a single man is not con-
sonant with the spirit of our institutions or with our constitution,
which declares that no person shall be deprived of life, liberty, or
property without due process of law. Process which tries a man
without formality for a "petty" offense, and punishes him in the
same manner as, and along with, criminals violating the laws of
the State, with no right to a jury trial, no record save the entries
upon a recorder's docket, and upon his judgment alone, is not due
process. We do not hold that the recorder's court of the City of
Macon is illegal, or that the recorder can not proceed to try offend-
ers against the municipal ordinances and pass such sentences as the
law authorizes; but what we hold is that a sentence which requires
the offender to be confined at labor in the county chain-gang along
with violators of the State laws does not furnish constitutional
authority for such confinement, and that the provision of the char-
ter of the City of Macon which authorizes the confinement of offend-
ers against municipal ordinances in the county chain-gang for not
more than six months is unconstitutional.

The fact, however, that the accused has been illegally sentenced
will not result in his absolute discharge from custody, where a legal
sentence can be imposed. Direction is given that the applicant be
not confined in the county chain-gang, but be taken therefrom and
carried before the recorder to be sentenced in accordance with law.
*Littlejohn* v. *Stells*, 123 *Ga.* 427, 431 and cit.; *Coleman* v. *Nelms*,
119 *Ga.* 307.

*Judgment reversed, with direction. All the Justices concur.*