### LOEB *v.* JENNINGS.

1. The charter of the City of Atlanta and the ordinances passed under it gave authority to the recorder, upon conviction of a person charged with keeping spirituous, fermented, or malt liquors for illegal sale, to sentence him to pay a fine of five hundred dollars, and also to work on the streets and public places of the city for thirty days.

2. Where duly authorized by the municipal charter and ordinances, a sentence by a recorder which requires the person convicted of a violation of a penal ordinance to work on the streets or other public works of a city is not void or illegal on the ground that it is violative of par. 9 of sec. 1 of art. 1 of the constitution of this State (Civil Code, § 5706), which declares that excessive fines shall not be imposed nor cruel and unusual punishments inflicted.

(a) It can not be said, in view of the character of the offense committed, that the fine of five hundred dollars which was imposed was so excessive as to be unconstitutional.

3. The eighth amendment of the constitution of the United States, which provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" (Civil Code, § 6021), refers to powers exercised by the government of the United States, and not to those of the individual States.

4. A sentence imposed on one convicted of violating a municipal ordinance, which required him to pay a fine and also work on the streets or other public places of the city, was not violative of the provisions contained in the fourteenth amendment of the constitution of the United States (Civil Code, § 6030), that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; . . nor deny to any person within its jurisdiction the equal protection of the laws."

5. To punish such an offender by confining him at labor under municipal control is not obnoxious to the constitutional inhibition against involuntary servitude save as a punishment for crime after legal conviction therefor.

(a) Even if there were some acts of misconduct shown on the part of persons in charge of those convicted of violating municipal ordinances, the evidence was not such as to render the conviction or sentence illegal, or show that it was error on the part of the judge presiding at the hearing upon the return of the writ of habeas corpus to decline to discharge the applicant, who had been so convicted, from custody.

6. The provision of the constitution of this State that "No person shall be deprived of life, liberty, or property, except by due process of law," does not guarantee a trial by jury to one charged with the violation of a valid municipal ordinance, but he may be summarily tried and convicted, without a jury, in a police court having jurisdiction to try petty offenses against the peace, good order, and security of the municipality; and this is true although, under such ordinance and the charter of the city, the offender is sentenced to pay a fine of $500 and also to work upon the streets or other public places of the city for thirty days.

7. Such a trial without a jury, and the sentence so imposed, are not violative of the provision of the constitution of the United States which declares, "nor shall any State deprive any person of life, liberty, or property without due process of law."

<div align="center">Decided February 16, 1910.</div>

The Court of Appeals certified to this court the following questions:

(1) Samuel Loeb was convicted in the recorder's court of the City of Atlanta for a violation of section 1537 of the city code of Atlanta, which was adopted by the city council on June 21, 1886, and is in the following language: "Any person, firm, or corporation who shall keep for unlawful sale in any store, house, room, office, cellar, stand, booth, stall, or other place, or shall have contained for unlawful sale in any barrel, keg, demijohn, or other package, any spirituous, fermented, or malt liquors for such sale, shall, on conviction, be punished by fine not exceeding five hundred dollars, or imprisonment not exceeding thirty days, either or both, in the discretion of the court." The sentence of the recorder was in the

following language: "It is ordered that said defendant pay a fine of five hundred dollars and costs and the said defendant also work on the streets and public places of said city thirty days." Was authority to impose said sentence, and especially so much thereof as added the requirement that the defendant also work on the streets and public places of said city for thirty days, authorized by said ordinance taken in connection with an act of the General Assembly of this State, passed in 1874, being an act to amend the the charter of the City of Atlanta, in which the following language is contained: "The mayor and general council shall have the power and authority to prescribe by ordinance adequate penalties for all offenses against the ordinances of said city, and to punish offenders by fines not exceeding five hundred ($500.00) dollars, and imprisonment in the calaboose not exceeding thirty days, for each offense; to enforce the payment of fines by compelling offenders, and those who fail or refuse to pay said fines, to work on the streets or public works of said city. They shall have power to compel offenders sentenced to imprisonment in the calaboose, as aforesaid, to labor on the public works or streets, to be regulated by ordinance,"—the said council of Atlanta having passed an ordinance in pursuance of said amendment of the charter, in the following language, to wit: "Sec. 1771. When any person is convicted of an offense against the laws and ordinances of the city, before the recorder, mayor, or mayor pro tem., or other presiding officer, it shall be discretionary with the court to punish such offenders by ordering them to work on the streets or public works of the city, under the supervision of the proper officer; and payment of all fines, not otherwise paid, may be enforced by work as aforesaid." ?

(2)   Is said sentence, especially in so far as it requires that the defendant shall work on the streets or other public works of the city, void or illegal because it is violative of paragraph 9 of section 1 of article 1 of the constitution of the State of Georgia, as codified in §5706 of the Civil Code, which provides that excessive fines shall not be imposed, nor cruel and unusual punishments inflicted; or because it is violative of that provision of the constitution of the United States, codified in §6021 of the Civil Code, to the same effect; or because it was imposed by the recorder without the right on the part of the defendant to a jury trial; or because it is a sentence which involves involuntary servitude without a trial by

jury; or because it is violative of that provision of the constitution
of the United States which is contained in § 6030 of the Civil Code,
which provides that no State shall make or enforce any law which
shall abridge the privileges or immunities of citizens of the United
States; nor shall any State deprive any person of life, liberty, or
property, without due process of law, nor deny to any person within
its jurisdiction the equal protection of the laws?

(3) Where a defendant has been convicted and sentenced as
stated above, and it appears that he was being held in confinement
in the city stockade of the city for the purpose of enforcing that
portion of the sentence which requires work on the streets and
public places of the city, and under the evidence submitted on the
issue before the court as to the legality of this confinement it ap-
pears that the prisoners convicted, and held to labor, by the city,
were sent out to the stockade in a van or wagon latticed with iron
bars and with a lock on the door to prevent them from escaping;
that when they arrived at the stockade, they were carried into the
prison, where, in the discretion of the stockade authorities, he was
shackled with a chain, the shackle being put on with an iron ring
about one fourth of an inch in diameter, fastened on each leg above
the ankle at about the top of the shoe, with a chain twenty-two
inches in length, extending from ring to ring on the ankles—about
75 per cent. of the prisoners being so shackled. The prisoners
thus manacled are put to work every day (except in case of physical
disability) and are worked on the streets or at the rock quarries,
with the shackle and chain attached. They are worked in gangs,
though the men are not chained together, and are worked under a
guard with a shot-gun. There is also what is known as a whip-
ping-boss who has a leather strap about two and one half feet long,
with a solid end clasp about two or three inches wide; the strap
being made of single leather but doubled part of the way. The
prisoners are required to sleep in a hall, with the races and sexes
separated; but the prisoners are required to sleep in the clothes in
which they work during the day. The prisoners are not required to
wear stripes. They are not worked in connection with misde-
meanor and felony convicts. Only city prisoners are kept in the
stockade, and only city employees have control over them. The
prisoners are "sometimes strapped." Is the custody of the prisoner,

under the sentence aforesaid and under the circumstances above stated, legal custody?

(4). Is it violative of that portion of the constitution of this State which is contained in article 1, section 1, paragraph 3, thereof, and is codified in §5700 of the Civil Code, and which provides that no person shall be deprived of life, liberty, or property except by due process of law, or of that portion of the constitution of the United States which is set out in §6030 of the Civil Code of this State, and which provides, "nor shall any State deprive any person of life, liberty, or property without due process of law," that the recorder's court of the City of Atlanta should, without affording defendant a right of trial by jury, sentence him and require him to be confined and to be put at labor on the streets or other public works of the city in the manner and under the conditions and circumstances above described?

*F. M. Hughes, Morris Macks, Anderson, Felder, Rountree & Wilson,* and *Moore & Branch,* for plaintiff.

*J. L. Mayson* and *W. D. Ellis Jr.,* for defendant.

LUMPKIN, J. 1. One ordinance provided that the violator of it might be punished by a fine not exceeding $500, or imprisonment not exceeding thirty days, or both, in the discretion of the court; the other, that, upon conviction in the recorder's court, "it shall be discretionary with the court to punish such offenders by ordering them to work on the streets or public works of the city, under the supervision of the proper officer," etc. So far as the ordinances could confer the authority, there can be no doubt that they did so.

The section of the charter of the City of Atlanta which is quoted by the Court of Appeals declares that "the mayor and general council shall have the power and authority to prescribe by ordinance adequate penalties for all offenses against the ordinances of said city, and to punish by fines not exceeding $500 and imprisonment in the calaboose, not exceeding thirty days, for each offense; to enforce the payment of fines by compelling offenders and those who fail and refuse to pay said fines to work on the streets or public places of said city. They shall have power to compel offenders sentenced to imprisonment in the calaboose, as aforesaid, to labor on the public works or streets, to be regulated by ordinance." This conferred power to pass ordinances providing for fines, imprisonment, enforcement of fines by work on the streets or public places,

and finally for compelling persons sentenced to imprisonment to work on the public works or streets. It authorized the ordinances in question. There is also another section bearing on the subject, not mentioned in the question. City Code of Atlanta, sec. 21. Under the legislative grant of power and the ordinances adopted by the municipal authorities, the sentence imposed, which added to a fine the requirement that the defendant should work on the streets and public places of the city, was authorized. *Lyons* v. *Collier*, 125 *Ga.* 231 (54 S. E. 183).

2. The power was thus conferred by the legislature and ordinances; the sentence to pay a fine and also to work on the streets or public places was within the authority conferred; and we can not say, in view of the character of the offense, that the fine was of such size, or the punishment so cruel and unusual, as to render it obnoxious to the constitutional provision of this State that excessive fines shall not be imposed, nor cruel and unusual punishments inflicted. Civil Code, §5706. Our whole penitentiary system includes the idea of requiring convicts to work on roads or public works. If this character of punishment were forbidden as per se cruel and unusual, the whole system would have to be abolished. We are not now dealing with the mode of trial, but with the idea that a sentence to work on the streets or public places is cruel and unusual within the meaning of the constitution. If it were so, neither a city nor the legislature could confer authority to inflict it. Such is not the case. Even some severity of punishment, within legitimate bounds, may be required by the public welfare and the nature of the offense, without constituting the cruel and unusual punishment prohibited. *Whitten* v. *State,* 47 *Ga.* 297; Wilkerson v. Utah, 99 U. S. 130 (25 L. ed. 345); In re Kemmler, 136 U. S. 436 (10 Sup. Ct. 930, 34 L. ed. 519); Ex parte Bedell, 20 Mo. App. 125; 8 Am. & Eng. Enc. Law (2d ed.), 436 et seq., and citations.

3. The provision of the eighth amendment of the constitution of the United States, that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted" (Civil Code, §6021), does not affect the case. The first ten amendments of that constitution have frequently been held to refer to powers exercised by the government of the United States, and not to those of the individual States. Pervear *v.* Common-

wealth, 5 Wall. 475 (18 L. ed. 608) ; Eilenbecker *v.* District Court of Plymouth County, 134 U. S. 31 (10 Sup. Ct. 485, 33 L. ed. 801) ; Spies *v.* Illinois, 123 U. S. 131, 166 (8 Sup. Ct. 21, 31 L. ed. 80).

The reference to the right of trial by jury, and due process of law as related to it, will be dealt with under a later question where the point is distinctly raised.

4. The complaint that the sentence under consideration violated the provision of the fourteenth amendment of the constitution of the United States, which declares that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States (Civil Code, § 6030), is without merit. It is unnecessary to discuss the use of similar language in the articles of confederation, or to endeavor to set out at length the fundamental privileges and immunities which are included therein. It has been said in general terms: "We feel no hesitation in confining these expressions to those privileges and immunities which are in their nature fundamental, which belong of right to all free governments, and which have at all times been enjoyed by the citizens of the several States which compose this Union, from the time of their becoming free, independent, and sovereign. What these fundamental principles are, it would be perhaps more tedious than difficult to enumerate. They may, however, be all comprehended under the following general heads: protection by the government; the enjoyment of life and liberty, with the right to enjoy and possess property of every kind, and to pursue and obtain happiness and safety; subject nevertheless to such restraints as the government may justly prescribe for the general good of the whole." Corfield *v.* Coryell, 4 Wash. (U. S.) 371; Paul *v.* Virginia, 8 Wall. (U. S.) 168, 180 (19 L. ed. 357) ; Van Valkenburg *v.* Brown, 43 Cal. 43, 48 (13 Am. R. 136). There is no constitutional privilege or immunity in any citizen of this State or of any other State to come within its borders and violate its laws in regard to prohibiting the sale of intoxicating liquors, or to violate a municipal ordinance prohibiting their keeping for illegal sale. There is also no merit in the claim that the sentence or the laws under which it was imposed violated the provision that no State shall "deny to any person within its jurisdiction the equal protection of the laws." No discrimination is made between citizens of different States. The ordinance applies equally to all who come within its purview. All

persons subject to it are by its terms alike guilty or innocent under similar circumstances, and there is no arbitrary discrimination. Missouri Pacific R. Co. v. Mackey, 127 U. S. 205, 209 (8 Sup. Ct. 1161, 32 L. ed. 107).

5. In the third question certified by the Court of Appeals are included several distinct matters. In the first place there is the question as to the legality of sentencing persons convicted in the recorder's court to work on the streets or public works at all, though under proper treatment; and in addition there are numerous particular facts or instances stated to have been shown by the evidence.

In *Pearson* v. *Wimbish*, 124 Ga. 701 (52 S. E. 751), it was held that "To punish such an offender [against a valid municipal ordinance] by confining him at labor under municipal control is not obnoxious to the constitutional inhibition against 'involuntary servitude, save as a punishment for crime, after legal conviction thereof.'" This is conclusive, so far as this court is concerned, of the legislative power to authorize a municipality to require those sentenced to confinement for infractions of municipal penal ordinances to labor. Nor is that ruling without support in other decisions. Ex parte Montgomery, 64 Ala. 463; People v. Hanrahan, 75 Mich. 611 (42 N. W. 1124). That the labor is to be performed on the public streets or works of the city does not, ipso facto, make the sentence illegal.

In the *Pearson* case, the trial was quite informal, the offense was different, and the sentence was different, making it a stronger case for the petitioner for the writ of habeas corpus than the one now before us.

As to the special matters touching the treatment of convicted persons, some of them may be necessary for effective administration and discipline; others seem extreme; and some of the particular acts described as committed on some persons may be illegal. Suppose that some of the prisoners have been mistreated, does that free this prisoner from liability to punishment? The ordinance under which he was tried was adopted in 1886. There is nothing on its face which indicates that the municipal council entertained any arbitrary, unreasonable, or discriminatory purpose in enacting it. It does not by its terms confer arbitrary or illegal powers or duties on the persons in charge of those convicted. Nor does the evidence show such an intent in its passage, or that unconstitutional power

was otherwise conferred by it.　An ordinance may be unreasonable, arbitrary, violative of the State or Federal constitution; or, though fair on its face, it may be so administered as to produce illegal results to a particular person.　Where, under a criminal statute of the State, there was a conviction for a misdemeanor, and the person convicted was unlawfully hired out, this detention was illegal; but on writ of habeas corpus the convict was not set free, but remanded to the custody of the proper officer.　*Russell* v. *Tatum*, 104 *Ga.* 332 (30 S. E. 812).　If a law is valid and constitutional, as enacted, improper acts of administrative officers after its passage can not make the law itself unconstitutional.　A State can not, either through its legislative or executive department, deny due process of law to any person.　But this does not mean that unauthorized acts of an officer, after conviction, or mere proof of misconduct by a jailer or guard or superintendent, will render a legal ordinance and conviction and sentence under it unconstitutional.　There is a difference between a law, or a sentence based on it, being unconstitutional, and possible illegal acts done under it by administrative officers.　We do not wish to be understood as meaning that the law, State or municipal, does or should tolerate brutality.　The State law declares that there shall not be "cruel and unusual punishments inflicted; nor shall any person be abused in being arrested, while under arrest, or in prison."　Penal Code, § 12.　Section 282 reads as follows: "If any jailer, by too great a duress of imprisonment, or other cruel treatment, shall make or induce a prisoner to become an approver, or accuse and give evidence against another, or be guilty of willful inhumanity or oppression to any prisoner under his care and custody, he shall be punished by removal from office, and imprisonment and labor in the penitentiary for not less than one year nor longer than three years."　One in charge of even State convicts can not act with unlawful violence toward a person under his control; and if he does so, he may be guilty of a punishable offense.　*Westbrook* v. *State*, 133 *Ga.* 578 (66 S. E. 788), where all the Justices concurred to the extent of the principle above announced, but two of them dissented as to its application to the case then in hand.　Convicted persons are human beings, and must be treated as such.　If there exists misconduct, it should be promptly stopped, and the offenders punished.　But it does not appear from the statement of the evidence set out in the question pro-

pounded by the ·Court of Appeals that the ordinances and the sentence of the recorder were ipso facto illegal so as to require a discharge of the applicant from custody.

6, 7. Finally, it is asked whether the trial of the plaintiff in error by the recorder without a jury, and the sentence to work on the streets or other public works of the city, constituted a violation of the provision of the State constitution, that no person shall be deprived of life, liberty, or property except by due process of law (Civil Code, §5700), or of that of the constitution of the United States, "nor shall any State deprive any person of life, liberty, or property without due process of law." This question is substantially controlled by former rulings of this court. *Hill* v. *Mayor etc. of Dalton*, 72 *Ga.* 314, 319 ; *Pearson* v. *Wimbish*, supra ; *Littlejohn* v. *Stells*, 123 *Ga.* 427 (51 S. E. 390) ; *Hood* v. *Von Glahn*, 88 *Ga.* 405 (14 S. E. 564) ; *Little* v. *Fort Valley*, 123 *Ga.* 503 (51 S. E. 501) ; *Duren* v. *City of Thomasville*, 125 *Ga.* 1 (53 S. E. 814). We have been asked to review and reverse the rulings on this subject adverse to the plaintiff in error. Under the Civil Code of 1895, §5588, and Acts of 1896 p. 42, §5, a decision concurred in by six Justices can only be reversed by the concurrence of all six. Under this rule we must decline to reverse the decisions above cited. Our decisions on this subject accord with many decisions in other States. State of New Jersey v. City of Trenton, 51 N. J. L. 498 (18 Atl. 116, 5 L. R. A. 352) ; People v. Dutcher, 83 N. Y. 244 ; Byers v. Commonwealth, 42 Pa. 89 ; State v. Conlin, 27 Vt. 318, 322 ; State v. Marx, 86 Va. 40, 48 (9 S. E. 475) ; Ogden v. Madison, 111 Wis. 413 (87 N. W. 568) ; Delaney v. Police Court, 167 Mo. 667 (67 S. W. 589) ; In re Kinsel, 64 Kan. 1 (67 Pac. 634, 56 L. R. A. 475) ; State v. Glenn, 54 Md. 574 ; Monroe v. Meuer, 35 La. 1192 ; McInerney v. Denver, 17 Colo. 302 (29 Pac. 516) ; City of Mankato v. Arnold, 36 Minn. 62, 65 (30 N. W. 305) ; Liberman v. Nebraska, 26 Neb. 464 (42 N. W. 419, 18 Am. St. R. 791) ; State v. Ruhe, 24 Nev. 251 (52 Pac. 274) ; Wong v. Astoria, 13 Oregon, 538 (11 Pac. 295) ; State ex rel. Belt v. Kennan, 25 Wash. 621 (66 Pac. 62). The fact that the sentence to imprisonment was not made in the alternative upon non-payment of the fine did not change the law on this subject.

If, under the State constitution and laws, persons charged with infractions of municipal ordinances can be tried without a jury,

this does not violate the clause of the constitution of the United States which declares that no State shall deprive a person of life, liberty, or property without due process of law, the defendant having notice and an opportunity to be heard in his defense. The Supreme Court of the United States has said: "If the State constitution and laws as construed by the State court are consistent with the fourteenth amendment, we can go no further. The only question for us is, whether a State could authorize the course of proceedings adopted, if that course were prescribed by its constitution in express terms." Rawlins v. Georgia, 201 U. S. 638, 639 (26 Sup. Ct. 560, 50 L. ed. 899); Natal v. Louisiana, 139 U. S. 621 (11 Sup. Ct. 636, 35 L. ed. 288); Walker v. Sauvinet, 92 U. S. 90 (23 L. ed. 678); Hall v. Armstrong, 65 Vt. 421 (26 Atl. 592, 20 L. R. A. 366); Fant v. Buchanan (Miss.), 17 So. 371; Holden v. Hardy, 169 U. S. 366 (18 Sup. Ct. 383, 42 L. ed. 780); Davidson v. New Orleans, 96 U. S. 97 (24 L. ed. 616); Iowa Central R. Co. v. Iowa, 160 U. S. 389 (16 Sup. Ct. 344, 40 L. ed. 467); Hallinger v. Davis, 146 U. S. 314 (13 Sup. Ct. 105, 36 L. ed. 986); Ex parte Wall, 107 U. S. 265 (2 Sup. Ct. 569, 27 L. R. A. 552); In re Krug, 79 Fed. 308 (3).

Several of the questions certified include within themselves more than one question of law. We do not deem it necessary to divide them up and answer each in categorical form. What is said above covers all of the questions propounded by the Court of Appeals. And we confine ourselves to such questions.

<div align="right">

*All the Justices concur.*