RICHARD HOWARD *et al. v.* THE STATE.

SIDDIE VON DRAKE *v.* SAME.

(*Knoxville.* September Term, 1920.)

1. INDICTMENT AND INFORMATION. ''Information'' defined, and common-law procedure stated.

An "information" is a written accusation of crime, preferred by a public prosecuting officer, without the intervention of a grand jury, there being two kinds under English common-law procedure, the first for an offense against the king, filed without leave of court by the Attorney General *ex officio;* the second being against private individuals and exhibited by the masters of the crown. (*Post, pp.* 542-546.)

Acts cited and construed: Acts 1778, ch. 5, sec. 2.

Cases cited and approved: Weeks v. United States, 216 Fed., 292; Pearson v. Wimbish, 124 Ga., 701.

Code cited and construed: Sec. 7059 (T.-S.).

2. COMMON LAW. Not in force in Tennessee as entirety.

The common law in its entirety and as a distinctive system of laws has never been in force in Tennessee, but only such part thereof has been in force in the State as had been adopted and was in force in North Carolina, when the territory embraced in Tennessee was ceded by North Carolina to the federal government. (*Post, pp.* 546-549.)

Cases cited and approved: Smith v. Bank, 115 Tenn., 12; Moss v. State, 131 Tenn., 94.

Cases cited and distinguished: State v. Hardie, 23 N. C., 48; State v. Crook, 91 N. C., 536-540.

3. INDICTMENT AND INFORMATION. Use of criminal informations not permissible in Tennessee.

The use of criminal informations, except for small or petty offenses in the nature of violations of municipal ordinances, was not a part of the common law of North Carolina at the time of the cession by that State of the territory embraced in the State of Tennessee; its use as a method of criminal procedure being prohibited and denied in North Carolina, so that, in the absence of statutory authorization, it is not now permissible in Tennessee. (*Post, pp.* 549-552.)

Cases cited and approved: McGinnis v. State, 28 Tenn., 44; State v. Sexton, 121 Tenn., 35; Trigally v. Memphis, 46 Tenn., 382; Hogan v. Chattanooga, 2 Shan. Cas., 339; O'Haver v. Montgomery, 120 Tenn., 448.

Code cited and construed: Sec. 6952 (T.-S.).

Constitution cited and construed: Art. 1, sec. 9; Art. 6, sec. 14.

## FROM HAMILTON.

Error to the Criminal Court of Hamilton County.—Hon. S. D. McReynolds, Judge.

W. B. Miller and C. W. Lusk, for appellants.

Wm. H. Swiggart, Jr., Assistant Attorney-General, for the State.

Mr. E. J. Smith, Special Justice, delivered the opinion of the Court.

On July 8, 1918, the criminal court of Hamilton county adopted certain rules of court, sections 1 and 3 of which are as follows:

"In all misdemeanor cases bound over from the city court of Chattanooga and the justices of the peace of the county the papers shall be referred to the attorney-general for action, and in all proper cases, within the discre-

tion of the attorney-general, information shall be filed setting forth the offense with reasonable particularity of description and nature thereof. Such information shall be signed by the attorney-general under his official oath, and shall be substantially in the form of an indictment or presentment and shall not require a prosecutor."

"The attorney-general is also authorized to file information in the same manner and form upon original complaint made of a violation of any law designated as misdemeanor, if, in his judgment, the facts disclosed warrant a prosecution."

On July 10, 1918, acting in obedience to the above rules of court, the district attorney-general of Hamilton county preferred two criminal informations against the plaintiffs in error, in the first of which they were charged with the offense of lewdness, and in the second of which Mrs. Von Drake was charged with keeping a disorderly house. The trial judge heard the evidence without a jury, holding that the plaintiffs in error had waived their right to a jury trial by not demanding the same as provided by a rule of court recently promulgated, and at the conclusion of the evidence he adjudged the plaintiffs in error guilty, fined each of them in the first case $50, and sentenced each of them to thirty days' confinement in the county jail, and in the second case an additional fine of $50 and costs was assessed against Mrs. Von Drake.

Motions for new trials having been denied, the plaintiffs in error have perfected appeals in error to this court and have here assigned numerous errors.

The chief error assigned here is that procedure by crim-. inal information is not authorized by law in Tennessee, and is by fair inference forbidden, and consequently that the proceedings had in the court below were illegal and contrary to law.

If procedure by criminal information is authorized by the law of Tennessee, its authorization must be found either in (1) some statute of the State, or (2) under the common law of the State.

That no such authority is conferred by any statute of this State is, we think, clear, and no argument is made in the case at bar on behalf of the State that this mode of criminal procedure has the sanction of any statute heretofore enacted in Tennessee.

An information is a written accusation of crime preferred by a public prosecuting officer without the intervention of a grand jury. There were two kinds of criminal information under the common-law procedure in England: the first being' for an offense against the king, and filed by the attorney-general *ex officio* and without leave of court. The second was against private individuals, and was exhibited by the masters of the crown. Informations, as used in the United States, are very generally of the former kind. 14 R. C. L., 153; *Weeks* v. *United States*, 216 Fed., 292, 132 C. C. A., 436 L. A. R., 1915B, 651, and note, Ann. Cas., 1917C, 524.

Under constitutional and statutory provisions generally, offenses cognizable in courts of record, as distinguished from petty misdemeanors, within the exclusive

Howard and Von Drake v. State.

jurisdiction of a justice of the peace, and violations of municipal ordinances, are prosecuted by indictment or information, and whether the one or the other depends upon the terms of the Constitution and statutes in each jurisdiction. *Pearson* v. *Wimbish,* 124 Ga., 701, 52 S. E., 751, 4 Ann. Cas., 501.

Beginning at an early day in Tennessee, district attorneys were authorized *ex officio* to file bills of indictment without a prosecutor marked on the same, in some twenty-four different classes of offenses. Section 7059, Thompson's Shannon's Code.

We think it clear, from an examination of the statutes of this State, that heretofore a district attorney-general has been authorized to proceed *ex officio* only by way of indictment, and that there has been no statutory recognition of the right of such an officer to proceed by way of criminal information.

If, therefore, the method of criminal procedure employed by the court below in the cases at bar is to be justified in this State, it must find its justification in the common law of the State.

The practice of proceeding by criminal information in cases below the grade of felony, it must be conceded, has been in force in England almost from the beginning of the common law, and it was therefore in force there when the American colonies were founded, as well as when they separated from the mother country. 2 Russell on Crimes (7 Ed.), p. 1923; 4 Blackstone's Commentaries, pp. 308, 310.

It undisputably appears, however, that the use of this writ in England, both as a method of criminal procedure, as well as a means of recovering statutory penalties, met with the disfavor of some of the greatest authorities on English jurisprudence. 2 Coke's Institutes, p. 51; 2 Hale's Pleas of the Crown. (1st Am. Ed.), pp. 150, 151.

In the work last cited Sir Matthew Hale, while recognizing the validity of proceeding by criminal information, says:

"By the statute of 2 Henry VII, chapter 3, there was power given to proceed upon all penal statutes by information before justices of assize and peace; but there is an exception of all cases of treason, murder and felony. . . . Ill use was made of this statute by Empson and Dudley, and great inconvenience and trouble to the people did arise by it, and therefore by 1 Henry VIII, chapter 6, it was repealed. . . . And although informations are practiced oftentimes in the crown office in cases criminal, yet this much is observable: That in all criminal cases, the most regular and safe way and most consonant to the statutes of Magna Charta is by presentment or indictment of twelve sworn men."

Sir William Blackstone (Commentaries, vol. 4, p. 311), in speaking of Sir Matthew Hale's aversion to the use of criminal information, says: .

"It is true, Sir Matthew Hale, who presided in this court soon after the time of such revival, is said to have been no friend to this method of prosecution; and, if so,

the reason of such his dislike was probably the ill use which the master of the crown office then made of his authority, by permitting the subject to be harassed with vexatious informations, whenever applied to by any malicious or revengeful prosecutor rather than his doubt of their legality or propriety upon urgent occasions."

· While doubtless, therefore, procedure by criminal information must be considered as having been established in England from the earliest times, it is apparent that its practice was not approved or sanctioned by two of the greatest of English jurists, who were likewise staunch advocates of the liberty of the subject and opposed official oppression in whatever form it appeared.

The recognition, however, of the validity of criminal informations as part of the English common law, does not justify the use of such a method of criminal procedure in Tennessee, unless it is a part of the common law of Tennessee, and it cannot be a part of the common law of Tennessee unless it was a part of the common law of North Carolina at the date of the cession of the territory which afterwards comprised the State of Tennessee by North Carolina. It may be conceded that, if procedure by criminal information was not resorted to or used in North Carolina, the fact of its not being used or resorted to would not be conclusive as to its nonexistence as a part of the common law of that State; but if, on the other hand, its use was prohibited in North Carolina prior to the cession of Tennessee, then admittedly it could never have been a part of the common law of Tennessee.

143 Tenn.—35

It is, of course, established law that all such parts of the common law as were not destructive of, repugnant to, or inconsistent with, the freedom or independence of North Carolina, were declared to be in full force within that State, except as this common law had not been otherwise provided for, abrogated or appealed. Chapter 5, section 2, Act April, 1778.

It is likewise well established that the common law, in its entirety and as a distinctive system of laws, has never been in force in Tennessee, but only such part thereof has been in force in Tennessee as had been adopted and was in force in North Carolina when the territory embraced in Tennessee was ceded by North Carolina to the federal government. *Smith* v. *Bank,* 115 Tenn., 12, 89 S. E., 392; *Moss* v. *State,* 131 Tenn., 94, 173 S. W., 859, Ann. Cas., 1916B, 1, and cases therein cited.

Section 8 of the Declaration of Rights in the Constitution of North Carolina of 1776, provides as follows:

"That no freeman shall be put to answer any criminal charge, but by indictment, presentment, or impeachment."

. It will be observed that this provision is identical with our constitutional provisions of 1796 and 1834, and, with the exception of the substitution of the word "person" for the word "freeman," is identical with our constitutional provision of 1870.

In the early case of *State* v. *Hardie,* 23 N. C., 48, 49, Judge GASTON, one of the most eminent jurists of North Carolina, in discussing the nature of the common-law writ of *quo warranto,* said:

Howard and Von Drake v. State.

"Besides this peculiar information, well known as 'the information in the nature of a *quo warranto*,' there was a mode of prosecution for the punishment of crimes by 'information.' This was, by a suggestion or charge, drawn up in form, and filed on record by the king's attorney-general, or by his coroner or master of the crown office, in the Court of King's Bench; and was deemed sufficient in every case not capital to call every man to answer for the offense therein charged. There could be no doubt but this mode of criminal prosecution was as ancient as the common law itself, but the tyrannous use made of it in high prerogative times, especially after jurisdiction of criminal prosecutions by information was extended to other tribunals than the Court of King's Bench, justly subjected it to the reprobation of the friends of freedom. The framers of our Bill of Rights were not schoolmen dealing in metaphysical abstractions, and busied about technical forms, but practical statesmen, guarding against real abuses of power, and securing the substantial rights of freemen. They intended to prohibit this mode of prosecution for crimes, and to throw around the object of penal visitation the protection either of a grand jury, or of an inquiry by the impeaching body—before he could be required to plead to a criminal accusation. Such is the purpose of the eighth section of the Bill of Rights; and accordingly we find it connected with a number of provisions, from the seventh to the tenth, inclusively, in which are embodied the securities for a fair hearing, full defense, impartial trial, and the administration of justice

in mercy to all sought to be convicted and punished because of public offenses. The proceeding before us is carried on *diverso intuitu,* and to hold it prohibited by the Bill of Rights would be to sacrifice substance to mere form. If, indeed, it should ever be attempted in informations of this character to impose a real fine, or to inflict any other punishment, so as to make them in effect criminal prosecutions, such attempts would fall before the explicit prohibitions of the section of the Bill of Rights now needlessly invoked."

It is difficult to construe the language used by the learned judge in the above-cited case in any other light than as being a prohibition against the use of criminal information under the Constitution then in force in North Carolina. If corroboration of the correctness of this conclusion is needed, it will be found in the fact that such continued to be the uniform judicial construction placed on this constitutional provision until the adoption of the Constitution of North Carolina of 1875. This later Constitution provided as follows:

"Art. 1, Sec. 12. No person shall be put to answer any criminal charge, except as hereinafter allowed, but by indictment, presentment, or impeachment.

"Sec. 13. No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court. The legislature may, however, provide other means of trial for petty misdemeanors, with the right of appeal."

Howard and Von Drake v. State.

In the case of *State* v. *Crook,* 91 N. C., 536-540, decided some years after the ratification of the Constitution of 1875, the supreme court of that State, in holding that a trial for a petty misdemeanor for unlawfully releasing impounded stock, held before a justice of the peace without a jury, was not a violation of the Constitution, said:

"Prior to the present Constitution, the legislature did not possess such power, and there was much complaint at the costliness, inconvenience, and delay in the administration of criminal justice in respect to small offenses."

While it is true in North Carolina, as well as in Tennessee, that prosecutions for small offenses or violations of municipal ordinances have never been held to be criminal charges within the meaning of constitutional provisions, requiring that no person shall be put to answer any criminal charge but by presentment, indictment, or impeachment, yet it is likewise true that no instance can be found in North Carolina, prior to the separation of Tennessee therefrom, or in Tennessee since its establishment as a separate State, wherein it has been held that a citizen could be subjected to a criminal prosecution which might involve the assessment of a fine in excess of $50, or the infliction of a jail sentence, unless the constitutional mandate was obeyed and the proceeding had by way of indictment or presentment.

We conclude that the use of criminal informations, except for small or petty offenses of the character above described, was not a part of the common law of North Caro-

lina, at the time of the cession by that State of the territory embraced in the State of Tennessee, but, on the contrary, its use as a method of criminal procedure was prohibited and denied in that State.

It is worthy of observation that at an early day, doubtless in obedience to article 6, section 14, of the Constitution of Tennessee, which provides that no fine shall be laid on any citizen of this State in excess of $50, unless it shall be assessed by a jury, who shall assess the fine at the time they find the fact, what is known as the small offense statute was enacted. This statute (section 6952, Thompson's Shannon's Code) expressly provides that violations of the criminal law, denominated small offenses may be punished by a justice of the peace by a fine not exceeding $50. The enactment of this statute is a recognition of the fact that, if a fine in excess of $50 may be levied, or any punishment imposed, it must be by a jury under article 6, section 14, of the Constitution, and article 1, section 9, guarantees a trial by an impartial jury in prosecutions by an indictment or presentment. Differently stated, there has from the beginning in Tennessee seemingly been a recognition of the fact that under the Constitution a citizen could not be punished, except by the verdict of a jury, for a criminal offense, wherein a fine in excess of $50 might be imposed, and the right of a jury trial was guaranteed by article 1, section 9, in all cases prosecuted by indictment or presentment, thereby making the constitutional right of a trial by jury the correlative of crim-

inal offenses which under article 1, section 14, of the Constitution, have to be prosecuted by indictment or presentment.

There is nothing in *McGinnis* v. *State*, 9 Humph., 44, 49 Am. Dec., 697; *State* v. *Sexton*, 121 Tenn., 35, 114 S. W., 494; *Trigally* v. *Memphis*, 6 Cold., 382; *Hogan* v. *Chattanooga*, 2 Shan. Cas., 339, and other cases cited by the State, which gives color to the view that a common-law criminal information may be used in Tennessee in any case wherein a fine in excess of $50, or a term of imprisonment, may be imposed on conviction thereof. The above-cited cases, and others which might be cited, were- concerned only with small offenses; wherein no fine in excess of $50 could be imposed, or were violations of municipal ordinances which have long been recognized in Tennessee as being merely civil actions for the recovery of a penalty in the nature of a debt, or partaking both of a civil and *quasi*-criminal character. *O'Haver* v. *Montgomery,* 120 Tenn., 448. 111 S. W., 449, 127 Am. St. Rep., 1014.

Concluding, therefore, that there is no statutory or common-law authority or justification for the use of a criminal information in Tennessee in cases other than those involving offenses under the small offense law, or for violations of municipal ordinances, it becomes necessary to inquire whether the use of a criminal information for misdemeanors generally can be authorized by the legislature in the light of article 1, section 14, of the Constitution, which provides:

"That no person shall be put to answer any criminal charge but by presentment, indictment, or impeachment."

It results that the judgment of the criminal court of Hamilton county in these cases will be reversed, and the cases remanded for further proceedings not inconsistent with this opinion.